CASE  09-C-2104          KANAWHA                                        PAGE    1

WV INVESTMENT MANAGEMENT BOARD vs.  VARIABLE ANNUITY LIFE INSURANC

LINE   DATE      ACTION

1  11/12/09   # ISSUED SUM & 2 CPYS; F FEE; RCPT 451158; $145.00; CASE INFO
2             SHEET; COMPLAINT W/EXH'S
3  11/17/09   ### LET FR SS DTD 11/13/09; SUM W/RET (11/13/09 SS) AS TO VARIABLE
4             ANNUITY LIFE INS. CO.
5  11/23/09   ### E-CERT FR SS AS TO VARIABLE ANNUITY LIFE INS. CO. DTD 11/17/09

A TRUE COPY
TESTE: _____ CLERK
CIRCUIT COURT KANAWHA COUNTY, W.VA.

EXHIBIT
A

PENGAD 800-631-6989

*09 C-2104*

FILED

2009 NOV 23 PM 2: 13

CANDY S. GATSON CLERK
KANAWHA COUNTY

**Barnett, Carlye**

| | | | |
|---|---|---|---|
| **From:** | Process@wvsos.com [Process@wvsos.com] | **Sent:** | Mon 11/23/2009 11:32 AM |
| **To:** | sop_delivered@wvsos.com | | |
| **Cc:** | | | |
| **Subject:** | Case # 09-C-2104 Return Receipt Notification From WV Secretary of State's Office | | |
| **Attachments:** | | | |

** THIS IS AN AUTOMATED E-MAIL MESSAGE. **
** If you received this message in error, please notify the WV Secretary of State's Office by replying to this message. **

This notification is sent to alert you that a return receipt has been received.
Please find the return receipt in the body of this message below.

To :

VARIABLE ANNUITY LIFE INSURANCE COMPANY
CORPORATION SERVICE COMPANY
209 WEST WASHINGTON STREET
CHARLESTON, WV 25302

The letter was sent on 11/13/2009

Civil Action Number: 09-C-2104
Restricted: N
Certified Number : 91719237900010001670670

This information supplied from Pitney Bowes Distribution Solutions

 **UNITED STATES POSTAL SERVICE**

Date Produced: 11/23/2009

WV SECRETARY OF STATE

The following is the delivery information for Certified Mail™ item number 7192 3790 0010 0016 7067. Our records indicate that this item was delivered on 11/17/2009 at 10:30 a.m. in CHARLESTON, WV, 25302. The scanned image of the recipient information is provided below.

Signature of Recipient:


Address of Recipient:


Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representitive.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 3418879 47695721

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV  25305





**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

|  |  |
|---|---|
| ControlNumber: | 286111 |
| Defendant: | Variable Annuity Life Insurance Com |

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston WV  25301-2500

|  |  |
|---|---|
|  | 11/13/2009 |
| Civil Action: | 09-C-2104 |
| Certified: | 91719237900001000167067 |

I am enclosing:

| | | |
|---|---|---|
| ____ summons | ____ affidavit | _1_ summons and complaint |
| ____ notice | ____ answer | ____ summons returned from post office |
| ____ order | ____ cross-claim | ____ summons and amended complaint |
| ____ petition | ____ counterclaim | ____ 3rd party summons and complaint |
| ____ motion | ____ request | ____ no return from post office |
| ____ suggestions | ____ certified return receipt | ____ notice of mechanic's lien |
| ____ interrogatories | ____ request for production | ____ suggestee execution |
| ____ original | ____ request for admissions | ____ Other |
| ____ subpeona duces tecum | | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact.  According to law, I have accepted service of process in the name and on behalf of your authorized insurance company.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on behalf as your attorney-in-fact.   Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper.  Please do not call the Secretary of State's office.*

Sincerely,

*Natalie E Tennant*

Natalie E. Tennant
Secretary of State

3-4

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

THE WEST VIRGINIA INVESTMENT
MANAGEMENT BOARD, a public body
corporate, and THE WEST VIRGINIA
CONSOLIDATED PUBLIC RETIREMENT
BOARD, a public agency,

        Plaintiffs,

v.                                  Civil Action No. _09-C-2104_

THE VARIABLE ANNUITY LIFE
INSURANCE COMPANY, a Texas
corporation,

        Defendant.

## SUMMONS

**To the above-named Defendant:**    **THE VARIABLE ANNUITY LIFE
INSURANCE COMPANY**
2929 Allen Parkway
Houston, Texas 77019

      **IN THE NAME OF THE STATE OF WEST VIRGINIA,** you are hereby summoned and required to serve upon Gerard R. Stowers, plaintiffs' attorney, whose address is Bowles Rice McDavid Graff and Love LLP, Post Office Box 1386, Charleston, West Virginia 25325-1386, an answer, including any related counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer to the Complaint within thirty (30) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above-styled civil action.

Dated: _11/12/09_

_Cathy S. Gatson_
Clerk of the Court
by _CRumfes_

*Stamp: 2009 NOV 13 PM 2:25 SECRETARY OF STATE STATE OF WEST VIRGINIA — ACCEPTED FOR SERVICE OF PROCESS*

CIVIL CASE INFORMATION STATEMENT
CIVIL CASES

In the Circuit Court of Kanawha County, West Virginia

I.    CASE STYLE:

Plaintiff:

THE WEST VIRGINIA INVESTMENT
MANAGEMENT BOARD, a public body
corporate, and THE WEST VIRGINIA
CONSOLIDATED PUBLIC RETIREMENT
BOARD, a public agency,

Case #: O9.C-2104
Stucky

v.

|                                                          | Days to Answer | Type of Service |
|----------------------------------------------------------|----------------|-----------------|
| Defendants:                                              |                |                 |
| THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, a Texas corporation 2929 Allen Parkway Houston, Texas   77019 | 30             | Sec of State    |

**ORIGINAL AND 2 COPIES OF PETITION FURNISHED HEREWITH.**

PYMT Type __CK__
Rcpt # __451158__                    $145__ $135__
Iss. Sum.+___cc        __No Sum. Iss
__Ret. to Atty.        __$20cm X __
__Mailed CM/RM        __$5 clk X __
__Mailed to sos w/ck#
__Sent to            w/ck#

| PLAINTIFF: | THE WEST VIRGINIA INVESTMENT MANAGEMENT BOARD, et al. |
| --- | --- |
|  | CIVIL ACTION NO.: |
| DEFENDANT: | THE VARIABLE ANNUITY LIFE INSURANCE COMPANY |

II.  TYPE OF CASE:

| TORTS | OTHER | CIVIL |
| --- | --- | --- |
| ☐ Asbestos | ☐ Adoption | ☐ Appeal from Magistrate |
| ☐ Professional Malpractice | ☒ Contract | ☐ Petition for Modification of Magistrate Sentence |
| ☐ Personal Injury | ☐ Real Property | ☐ Miscellaneous Civil |
| ☐ Product Liability | ☐ Mental Health | Other: |
| ☐ Other Tort | ☐ Appeal of Administrative Agency | |

III.  JURY DEMAND:   ☐ YES      ☒ NO

CASE WILL BE READY FOR TRIAL BY (Month/Year):  June 2010

IV.  DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?   **NO**

IF YES, PLEASE SPECIFY:

☐ Wheelchair accessible hearing room and other facilities
☐ Interpreter of another auxiliary aid for the hearing impaired
☐ Reader or other auxiliary aid for the visually impaired
☐ Spokesperson or other auxiliary aid for the speech impaired
☐ Other:

Attorney Name:_____Gerard R. Stowers (WVSB 3633)_____   Representing: **Plaintiff**

Firm: Bowles Rice McDavid Graff & Love LLP

Address: 600 Quarrier Street, P. O. Box 1386,

Charleston, West Virginia  25325-1386

Telephone:_____(304) 347-1112_____

Dated:__November 12, 2009__

*Gerard R. Stowers*

Gerard R. Stowers

2768928.1

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

THE WEST VIRGINIA INVESTMENT
MANAGEMENT BOARD, a public body
corporate, and THE WEST VIRGINIA
CONSOLIDATED PUBLIC RETIREMENT
BOARD, a public agency,

Plaintiffs,

v.                                                Civil Action No. _O9-C-2104_
                                                                  _Stucky_

THE VARIABLE ANNUITY LIFE
INSURANCE COMPANY, a Texas
corporation,

Defendant.

# Complaint for Declaratory Relief

### Nature of Action

1.      This is a suit by the West Virginia Investment Management Board
(WVIMB) and the West Virginia Consolidated Public Retirement Board (WVCPRB) to obtain a
declaration that the defendant, The Variable Annuity Life Insurance Company (VALIC), must
surrender, upon demand by WVIMB and WVCPRB and without penalty or other restriction,
public money consisting of the investments of members of the West Virginia Teachers' Defined
Contribution Retirement System (WVTDC), as well as former members of WVTDC which are
now held in trust for the West Virginia State Teachers Retirement System (WVTRS).

**Parties**

2.      Defendant VALIC is a Texas corporation which has its principal place of business in Houston, Texas, and does business in West Virginia as a provider of retirement services and products such as annuities for use in retirement plans.

3.      Plaintiff WVCPRB is a public agency of the State of West Virginia created by state statute to administer a number of public retirement plans in this State, including WVTRS and WVTDC. W. VA. CODE § 5-10-D-1. WVCPRB is designated by state law as the trustee for these public retirement plans, except with regard to investment of the funds of the State's defined benefit plans. W. VA. CODE § 5-10D-1(g).

4.      Plaintiff WVIMB is a public body corporate created by state statute to serve as the principal investment management organization for the State of West Virginia for long-term assets, and is responsible for the investment of all of the State's defined benefit retirement plans, the Workers' Compensation and Pneumoconiosis plans and miscellaneous other long-term assets of the State and its political subdivisions. W. VA. CODE § 12-6-1a. Although WVIMB is responsible for investing the funds, it is ultimately required to transmit to the State Treasurer any funds requested to meet the obligations of the state government. W. VA. CODE § 12-6-5(20).

5.      WVIMB serves as the trustee with regard to the investment of the funds of all of the State's defined benefit public retirement plans, including WVTRS. W. VA. CODE § 12-6-3(a). Because WVIMB is the trustee for investment purposes for these plans, state law requires WVCPRB to transfer all funds received for the benefit of WVTRS to WVIMB for investment. W. VA. CODE § 5-10-D-1(f)(1). WVIMB is charged with providing "prudent fiscal

2

administration, investment and management for the funds of" WVTRS and other participant plans and funds. W. VA. CODE § 12-6-3(a).

## Jurisdiction and Venue

6.      Under the Uniform Declaratory Judgments Act, W. VA. CODE § 55-13-1, *et seq.*, the circuit courts of this State have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed.

7.      Venue in Kanawha County is appropriate pursuant to W. VA. CODE §§ 56-1-1(a)(2) and (6) because VALIC does business in Kanawha County, and because the seat of state government is located within Kanawha County.

## Count I (Declaratory Relief)

8.      Plaintiffs incorporate by reference paragraphs 1 through 7 of this Complaint as if fully restated herein.

9.      In 1941, the West Virginia Legislature created a retirement system for teachers and other school service personnel called the West Virginia State Teachers Retirement System (WVTRS). W. VA. CODE § 18-7A-1, *et seq.* Although originally a defined contribution retirement system, WVTRS became a defined benefit plan in 1970.

10.     In 1990, the West Virginia Legislature created a second retirement system for teachers and school service personnel, the Teachers' Defined Contribution Retirement System (WVTDC) to address concerns about TRS funding. W. VA. CODE § 18-7B-1, *et seq.* On July 1, 1991, the Legislature closed WVTRS to new employees and required all new employees

to join WVTDC. WVTRS members were also permitted to move into WVTDC if they so desired.

11.   In October 1991, WVCPRB entered into a VALIC Group Fixed Annuity Contract, form GFA-582, Annuity Contract 25005 (attached hereto as Exhibit A and incorporated by reference) permitting VALIC to offer a fixed annuity investment option to members of WVTDC. Annuity Contract 25005 guaranteed a minimum rate of return for WVTDC members of 4.5%.

12.   VALIC's sales personnel marketed and sold this investment option to WVTDC members, which consisted of public school teachers, administrators and school service personnel.

13.   Many WVTDC members elected to invest some or all of their retirement funds with VALIC and directed WVCPRB to transfer to VALIC some or all of the mandatory employee contributions of 4.5% of each member's salary and the employer's 7.5% contribution.

14.   Despite representations made by VALIC to teachers, administrators and school service personnel, the value of VALIC's fixed annuity investments were generally not sufficient to support retirement for WVTDC members.

15.   In 2008, the West Virginia Legislature, recognizing that many WVTDC members' investments would not be sufficient for retirement, and finding that many desired to join a defined benefit system, enacted W. VA. CODE § 18-7D-1, *et seq.*, permitting WVTDC members to elect to voluntarily transfer their membership and assets to WVTRS.

16.    The legislation made the ability of WVTDC members to transfer contingent on the results of an election, in which at least 65% of actively contributing WVTDC members had to affirmatively elect to transfer.  W. VA. CODE §§ 18-7D-1(a)(5), 18-7D-3(b), 18-7D-5(a), (d) and 18-7D-7(b).   An election period was held and more than 78% percent of actively contributing WVTDC members affirmatively elected to transfer.

17.    The transfer legislation mandated that WVCPRB transfer the assets of electing WVTDC members to WVTRS:

> … the Consolidated Public Retirement Board shall transfer the members and all properties held in the Teachers' Defined Contribution Retirement System's Trust Fund in trust for those members who affirmatively elected to do so during that period to the State Teachers Retirement System, effective on the first day of July, two thousand eight … [and for certain other members, on the first day of August, two thousand eight].

W. VA. CODE § 18-7D-5(a).

18.    W. VA. CODE § 18-7D-7(b)(1) also provided that WVCPRB "shall, for each member who affirmatively elected to transfer …, transfer the assets held in the Teachers' Defined Contribution Retirement System's Trust Fund in trust for that member to the State Teachers Retirement System on the first day of July, two thousand eight," and for certain other members, on the first day of August, two thousand eight.

19.    The transfer legislation provided that this large influx of members into the WVTRS plan would be funded by the immediate transfer of those members' assets into WVTRS and by supplemental payments by transferring members to make up for the difference in employee contributions required by the two systems (WVTRS members contribute 6% of their salaries, as opposed to the 4.5% contributed by WVTDC members).

5

20.    Because WVIMB serves as the trustee for the investment of WVTRS funds, whereas WVCPRB serves as the trustee for the investment of WVTDC funds, this required a transfer of all assets of transferring members from WVCPRB to WVIMB.

21.    At the time of the July 1, 2008 transfer, approximately $250 million dollars of the assets of WVTDC members who elected to transfer to WVTRS was held by VALIC.

22.    Upon learning of the impending transfer and the need for the withdrawal of the funds from its fixed annuities and the transfer of these funds to WVIMB, VALIC threatened to impose a surrender charge of approximately $11 million dollars on the transfer of the funds.

23.    VALIC eventually acknowledged that Annuity Contract 25005 prohibited surrender charges, since Section 3.02 of the contract providing for a surrender charge was expressly deleted by an Endorsement which had always been a part of the contract.

24.    Confronted with VALIC's refusal to surrender the public funds, and as the trustee of these funds for investment purposes, WVIMB submitted inquiries to VALIC to determine how the money of these public employees was invested.  VALIC responded with information which was insufficient to allow WVIMB to fully and efficiently evaluate the potential risks or benefits of allowing these public funds to remain invested with VALIC.

25.    On December 10, 2008, WVCPRB transferred part of its interest in Annuity Contract 25005 to WVIMB, to fulfill the mandates of the transfer legislation, and VALIC and WVIMB entered into Annuity Contract 69562, the terms of which were identical to

Annuity Contract 25005. A copy of this contract is attached hereto as Exhibit B and incorporated by reference.

26. On December 18, 2008, WVIMB, as the trustee of the WVTRS plan for investment purposes, requested the return of all funds held under Annuity Contract 69562. A copy of the December 18, 2008 demand letter is attached hereto as Exhibit C and incorporated by reference.

27. VALIC refused to allow WVIMB to withdraw the funds. Instead, VALIC claimed that WVIMB's right to withdraw the money it held in trust for public employees was restricted to two methods requiring the withdrawal to occur over a total of five years, pursuant to one of two methods:

a. the Five Year Equal Annual Installment Method, whereby WVIMB could only withdraw the entire amount by withdrawing 20% per year for five years; or

b. the Decreasing Balance Method, whereby WVIMB could only withdraw one-fifth of the balance the first year, one-fourth of the remaining balance the second year, one-third of the remaining balance the third year, one-half of the remaining balance the fourth year, and the entire remaining balance during the fifth year.

28. Section 2.03 of the Annuity Contracts provide that if the assets held by VALIC are transferred to another funding entity for the plan, then there are no restrictions on transfer or surrender; therefore, VALIC should have returned all of the funds held for WVTRS upon demand by WVIMB, without restriction.

29.    In addition to the funds held by VALIC for WVTRS members who were previously members of WVTDC, VALIC holds funds for WVTDC members who elected not to transfer to WVTRS.  WVCPRB remains the trustee of these funds, which total approximately $60 million dollars.

30.    While the parties have never agreed about the right of WVIMB and WVCPRB to transfer these investments out of VALIC, in April 2009, VALIC did permit the withdrawal of 20% of the funds held under Annuity Contract 69562, which has been transferred to WVIMB.

31.    On that date, or before, WVIMB should have been permitted to withdraw the entire balance of the funds invested with VALIC on behalf of former WVTDC members, but VALIC has refused to transfer the balance of the funds despite repeated demands.

32.    There is a real and actual dispute about the requirements of the written agreement governing WVIMB's request for withdrawal of the funds held by VALIC.  VALIC claims that the Annuity Contracts prohibit WVIMB from withdrawing the full amount of the funds at once.   WVIMB and WVCPRB, who are statutorily vested with the prudent administration of the plan and investment of its funds, believe they are entitled to the withdrawal of the full amount of the funds upon demand.

WHEREFORE, WVCPRB and WVIMB respectfully demand:

a.    That the Court declare that WVCPRB and WVIMB are entitled to the withdrawal of the full amount of the public money held by VALIC for members of WVTRS and WVTDC, upon demand and without restriction;

      b.    Or, in the event the Court decides that WVCPRB and WVIMB are not entitled to the immediate withdrawal of all such funds, that the Court declare that WVCPRB and WVIMB are entitled to transparency and full disclosure regarding the investments and assets underlying the fixed annuities, on demand by WVIMB and WVCPRB;

      c.    That WVCPRB and WVIMB be awarded their costs, expenses and reasonable attorneys' fees incurred herein; and,

      d.    That the Court award such other and further relief as this Court deems just and proper and to which plaintiffs may be entitled.

THE WEST VIRGINIA INVESTMENT
MANAGEMENT BOARD and THE
WEST VIRGINIA CONSOLIDATED
PUBLIC RETIREMENT BOARD

By Counsel

Gerard R. Stowers (WVSB 3633)
Lenna R. Chambers (WVSB 10337)
BOWLES RICE McDAVID GRAFF & LOVE LLP
600 Quarrier Street
Post Office Box 1386
Charleston, West Virginia   25325-1386
(304) 347-1100

2760164.1

9



**Board Members:**
Governor Gaston Caperton
Chuck Polan, Chairman
Glen B. Gainer, Jr., Vice -Chairman

**Executive Secretary**
James L. Sims

# State of West Virginia
# Consolidated Public Retirement Board
Capitol Complex, Building 5, Room 1000
Charleston, WV 25305
Telephone: 304-348-2031, 800-642-8509 or 800-654-4406
Fax: 304-348-6337

**Board Members:**
David A. Haney
Tony Lautar, Jr.
James H. Morton
Elizabeth Poundstone
S. S. Satterfield
Janet F. Wilson
David L. Wyant

October 15, 1991

James J. Costello, Vice President
Variable Annuity Life Insurance Company
1767 Sentry Parkway West, Suite 300
Blue Bell, Pennsylvania 19422

      RE:  Individually Allocated Fixed Annuity as one
of the Investment Options for the Teachers' Defined
Contribution Retirement Plan

Dear Mr. Costello:

    This letter of understanding will be attached to the VALIC Master
Application Form and will be part of the contract.

    It is expressly understood that the original Proposal submitted by VALIC is
incorporated as a part of the Contract by and between the undersigned.  It is
further expressly understood that the Contract will be subject to the laws and
interpretations in the State of West Virginia.

    On all money deposited by participants in the West Virginia Teachers'
Defined Contribution Retirement Plan who invest in the individually allocated
fixed annuity, VALIC will pay a guaranteed rate of 8 1/2% until June 30, 1992,
along with any dividend that might be declared and paid.  It is our
understanding that VALIC intends to continue to pay the aforementioned interest
rate after June 30, 1992.

    Pursuant to West Virginia Code § 18-7B-1, *et seq.*, VALIC will supply a
statement of each account to the third party administrator in order for the
administrator to provide quarterly statements to participants and VALIC will
allow a participant to withdraw his or her investments at any time without
penalty, subject to the twenty percent annual limitation if funds withdrawn are
to be deposited into money market fund or income fund which consist of
guaranteed investment contracts.

               Agreed to by:

                James L. Sims

                James J. Costello, Vice President
                VALIC



**THE VARIABLE ANNUITY LIFE INSURANCE COMPANY**
P. O. Box 3206   Houston, Texas   77253-3206

# MASTER APPLICATION FORM

*Please Print All Information.*

---

## APPLICATION FOR CONTRACT FORM (Check one):

- [X] FIXED—Group Fixed Annuity (V-Plan) . . . . . . . . . . . . . . . . . . . . . . . . . . . . GFA-582
- [ ] FIXED/VARIABLE—Group Unit Investment Trust Annuity (Independence Plus) . . UITG-585
- [ ] FIXED/VARIABLE—Group Unit Purchase Annuity (GUP) . . . . . . . . . . . . . . . . . GUP64/74
- [ ] OTHER:

---

**1. APPLICANT** (check one): [X] Employer   [ ] Other _____ (Specify)

Name *(exact legal)*: *STATE OF WEST VIRGINIA*
*CONSOLIDATED PUBLIC RETIREMENT BOARD*

Mailing Address: *CAPITOL COMPLEX BLDG. #5*   Tax I.D. No.: |__|__|__|__|__|__|__|__|__|
STREET

*Room 1000 Charleston, WV 25305*   Telephone No.: ( *304* ) *348 2031*
CITY   STATE (ABV.)   ZIP CODE   AREA CODE

---

**2. OWNERSHIP/CONTROL**

For Deferred Compensation: _____ Employer

For other Plan Types *(check one)*:

- [ ] Employer
- [ ] Trustee
- [X] Other: *Employee with VESTING*

**3. TYPE OF PLAN** *(Check one)*:

- [ ] 403(b)  Voluntary Tax Deferred Annuity
- [ ] 403(b)  State Optional Retirement Plan
- [ ] 403(b)  Employer Retirement Plan
- [ ] Deferred Compensation Plan *(check one)*:
  - [ ] 457 Public Employer   [ ] 457 Private Non-Profit
  - [ ] Other _____
- [X] 401(a) or 403(a)  Employer Retirement Plan
- [ ] 401(a) or 403(a)  Self Employed Retirement Plan
- [ ] Other: _____

NAME OF PLAN: _____

---

**4. TYPE OF ORGANIZATION** *(Check one)*:

- [ ] PS —Public Educational Institutions
- [ ] NP —Non-Profit Organizations *(check one)*:
  - [ ] 501 (c) (3)*   [ ] Other
- [ ] PFP —Private Profit Organizations
- [X] SLGOV —State and Local Governments
- [ ] SELF —Self Employed Individuals

Nature of Business: _____

*Attach IRS determination letter.

**5. ADDITIONAL INFORMATION/REQUESTS**

---

## SPECIAL STATEMENTS/AGREEMENTS FOR GROUP FIXED/VARIABLE ANNUITY CONTRACTS

A current prospectus for the Company's Separate Account for the contract was provided with this application. Also, a current prospectus was provided for each Fund allowed to receive purchase payments. The prospectus for the Separate Account provides sales expenses and other data. It is understood that annuity payments (and termination values, if any) provided by the contract applied for are variable and not guaranteed as to dollar amount when based on the investment experience of the Company's Separate Account.

## SIGNATURES

Dated at *Charleston WV*   Date: *10-8*, 19 *91*
(CITY/STATE)

_____   _____
APPLICANT SIGNATURE   APPLICANT TITLE *Executive Secretary*

*JAMES J. Costello*   _____
AGENT NAME (PLEASE PRINT)   AGENT SIGNATURE   DATE

_____   _____
MANAGER SIGNATURE   DATE

---

HOME OFFICE COPY

VA-2899



**VALIC**

★ An American General Company

*Proposal* —

Tamara L. Little
Associate Director-
Marketing Technical Services

August 12, 1991

Mr. James L. Sims, Acting Executive Secretary
State of West Virginia
Consolidated Public Retirement Board
State Capital Complex, Building 5, Room 1000
Charleston, West Virginia 25305

Dear Mr. Sims:

Please find enclosed The Variable Annuity Life Insurance Company (VALIC)'s completed proposal for the State of West Virginia's new Teachers' Defined Contribution Plan.  This proposal was completed over VALIC's Group Fixed Annuity Contract (V-PLAN).

V-PLAN is a fixed only tax-deferred annuity designed to provide a vehicle for accumulating retirement income while taking advantage of attractive tax-deferred interest (currently 8.75%).  The V-PLAN contract being offered to the State offers no policy fees or surrender charges.  Furthermore, VALIC will guarantee a minimum of 8.50% on all contributions received from October 1, 1991 through June 30, 1992.

VALIC has a wide variety of annuity options and offers very competitive annuity purchase rates.  Additionally, VALIC will offer the same annuity purchase rates for all plan participants, even those accumulating under other investment options.  These annuity purchase rates can provide the employee with higher benefit payments.  VALIC is also offering a wide range of support services, as described in the proposal.

Should you require any additional information, please feel free to contact James J. Costello, Philadelphia Regional Manager.  His office address and phone number are as follows:

The Variable Annuity Life Insurance Company (VALIC)
1767 Sentry Parkway West 19, Ste. 300
Blue Bell, PA 19422
(215) 646-8030 or (800) 44-VALIC

Thank you for your interest in VALIC.  I hope the enclosed proves helpful to you and the employees of the State of West Virginia.

Sincerely,

*Tamara L. Little*

Tamara L. Little

cc:  James J. Costello

The Variable Annuity
Life Insurance Company

2929 Allen Parkway
Houston, Texas 77019
P. O. Box 3206
Houston, Texas 77253-3206
(713) 831-5069



**VALIC**

★ An American General Company

The Variable Annuity Life Insurance Company
2929 Allen Parkway
Houston, Texas  77019

In consideration of the application for this contract, (the "Contract"), and the Purchase Payments THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, ("VALIC"), agrees to:

- allocate the Purchase Payments to Participants' Accounts as directed by the Contract Owner,
- pay the annuity benefits as provided in the Contract, and
- provide the Contract Owner, the Participants and the Beneficiaries with the rights and benefits contained in the Contract.

The conditions and provisions on this and the following pages are made a part of the Contract. All conditions and provisions are subject to applicable state laws.

Executed at VALIC's Home Office on the issue date.

_(Secretary)_                                    _(President)_

_Actual Contract_

CONTRACT OWNER:  West Virginia Teachers' Defined Contribution Plan

GROUP ACCOUNT NUMBER:  25005

DATE OF ISSUE:  10/08/91

**GROUP FIXED ANNUITY CONTRACT
INDIVIDUAL ALLOCATIONS
NON-PARTICIPATING**

THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.

CM0CXST2

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| Section 1 | Definitions | 4 |
| Section 2 | Purchase Payments and Valuation Provisions | 4 |
| | 2.01 Purchase Payments | 4 |
| | 2.02 Annuity Value | 4 |
| | 2.03 Surrender Value | 4 |
| | 2.04 Minimum Annuity Value | 4 |
| | 2.05 Suspension of Purchase Payments | 4 |
| Section 3 | Charges  Under the Contract | 5 |
| | 3.01 Charge for Premium Taxes | 5 |
| | 3.02 Charge for Partial and Total Surrenders | 5 |
| Section 4 | Annuity Benefit Payment Provision | 5 |
| | 4.01 Annuity Date | 5 |
| | 4.02 Election to Commence Annuity Benefit Payments | 5 |
| | 4.03 Annuity Options | 5 |
| | 4.04 Automatic Annuity Option | 6 |
| | 4.05 Minimum Annuity Benefit Payment | 6 |
| | 4.06 Frequency of Annuity Benefit Payments | 6 |
| | 4.07 Betterment of Rates | 6 |
| | 4.08 Annuity Tables | 6 & 7 |
| Section 5 | Death Payment and Beneficiary Provisions | 8 |
| | 5.01 Death of Participant Prior to the Annuity Date | 8 |
| | 5.02 Death of Annuitant During the Annuity Period | 8 |
| | 5.03 Beneficiary Designation | 8 |
| Section 6 | General Provisions | 8 |
| | 6.01 The Contract | 8 |
| | 6.02 Participant Certificate | 8 |
| | 6.03 Misstatement of Age or Sex | 8 |
| | 6.04 Changes of Contract by VALIC | 9 |
| | 6.05 Changes of Contract by Mutual Agreement | 9 |
| | 6.06 Assignments | 9 |
| | 6.07 Termination or Suspension of the Contract | 9 |
| | 6.08 Deferment of Withdrawal | 9 |
| | 6.09 Incontestability | 9 |
| | 6.10 Reports to Participants | 9 |
| | 6.11 Minimum Benefits, Payments and Values | 9 |
| | 6.12 Non-Participating | 9 |

1.01 **Accumulation Period** -- the period between the date of the first Purchase Payment and the Annuity Date for a Participant.

1.02 **Annuitant** -- the Participant upon whose life annuity benefits will be based and to whom annuity benefits will be paid. If the Participant dies prior to the Annuity Date, the Beneficiary may be treated as the Annuitant.

1.03 **Annuity Date** -- the date on which annuity benefit payments begin.

1.04 **Annuity Period** -- the period during which annuity benefits are being paid.

1.05 **Beneficiary** - the person designated to receive payments, if any, on the Annuitant's death.

1.06 **Certificate Year** -- a twelve month period which commences with the issue date of a Participant's Certificate and each anniversary of that date.

1.07 **Contract Owner** -- the employer, or other organization, which makes application for the Contract.

1.08 **Contract Year** -- a twelve month period which commences with the issue date of the Contract and each anniversary of that date.

1.09 **Home Office** - of VALIC shall mean its main office located at 2929 Allen Parkway, Houston, Texas 77019.

1.10 **Net Purchase Payment** -- a Purchase Payment less any applicable premium taxes.

1.11 **Participant** -- a person who makes Purchase Payments or for whom Purchase Payments are made under the Contract.

1.12 **Participant's Account** -- an individual account which is established for a Participant to record the Annuity Value (Section 2.02) for the Participant.

1.13 **Purchase Payments** -- amounts paid to VALIC by, or on behalf of, Participants.

## Section 2

## PURCHASE PAYMENT AND VALUATION PROVISIONS

2.01 **Purchase Payments**

Purchase Payments may be paid to VALIC at any time for credit to Participants' Accounts. The amount of Purchase Payments may be determined by the Contract Owner or the Participants; and may be subject to the provisions of the Contract Owner's Retirement Plan and/or the Internal Revenue Code of 1954, as amended. Purchase Payments for a Participant will only be accepted during his or her lifetime and the Contract Owner shall designate the amount of each Purchase Payment to be allocated to respective Participants' Accounts.

2.02 **Annuity Value**

The Annuity Value allocated to a Participant during the Accumulation Period shall be equal to the Net Purchase Payments received for the Participant, plus any interest credited to the Participant's Account, less the amount deducted from the Participant's Account in connection with any partial surrenders.

During the Accumulation Period, interest will be credited to Participants' Accounts at a rate determined by VALIC. The interest rate shall be set in advance of the period to which it relates and shall not be less than an effective rate of 4 1/2% per year.

2.03 **Surrender Value**

The Surrender Value of a Participant's Account shall be equal to the Annuity Value less any applicable surrender charges. (See Section 3.02)

In the case of a full surrender of a Participant's Account prior to the Annuity Date, the Surrender Value shall never be less than Purchase Payments received for the Participant less any previous partial surrenders.

2.04 **Minimum Annuity Value**

If due to partial surrenders the Annuity Value of a Participant's Account falls below $300, the Participant's Account may be automatically surrendered.

2.05 **Suspension of Purchase Payments**

Purchase Payments to a Participant's Account may be suspended at any time. In the event that additional Purchase Payments are not made, the Annuity Value of the Participant's Account will continue to earn interest. Resumption of Purchase Payments for the Participant may occur at any time prior to the Annuity Date so long as the Participant's Account has not been surrendered and the Contract has not been terminated.

CV0GXST4

# Section 3

## CHARGES

**3.01   Charge for Premium Taxes**

A deduction is made from Purchase Payments to cover premium taxes, when applicable. Any such deduction will be made either from Purchase Payments when received, or from the amount applied to provide annuity benefits at the time annuity benefit payments commence, depending on applicable state law. If no amount for premium tax was deducted, but tax is subsequently determined to be due, VALIC reserves the right to reduce the Annuity Value or annuity benefit payments by the amount of the tax due at the time such determination is made. If an amount for any premium taxes was deducted but subsequently determined not to be due, VALIC will apply the amount deducted to increase the Annuity Value or annuity benefit payments at the time such determination is made.

**3.02   Charge for Partial and Total Surrenders**

A partial or total surrender of the Annuity Value of a Participant's Account will be subject to a surrender charge equal to the lesser of 7% of (a) all Purchase Payments which have been received for the Participant's Account during the 60 months immediately preceding the surrender, or (b) the amount of the surrender.

For purposes of calculating the surrender charge:

- the 60 months referred to above shall be counted from the day that the surrender request is received at VALIC's Home Office; and
- the most recent Purchase Payments are considered to be withdrawn first.

If no Purchase Payments have been received for a Participant's Account during the most recent 60 months or if a Participant's Account has been in effect for 15 years or longer, then there will be no charge for partial or total surrenders of the Participant's Account.

The first partial surrender per Certificate Year of 10% or less of the Annuity Value of a Participant's Account will not be subject to a surrender charge. However, if the first partial surrender exceeds 10% of the Annuity Value of a Participant's Account, the surrender charge will be applied to the amount in excess of 10%. The second or any subsequent surrenders of a Participant's Account during a Certificate Year will be subject to a surrender charge.

Once a surrender charge has been imposed on any Purchase Payment or portion thereof, that Purchase Payment or portion will not thereafter be considered as a Purchase Payment for purposes of calculating the surrender charge.

The surrender charge is not imposed upon commencement of annuity benefit payments (except in limited cases where the Fifth Option is selected and the right to surrender after annuity benefit payments begin is exercised) or upon any payments received by a Beneficiary in lieu of annuity benefit payments during the Annuity Period. The surrender charge is not imposed on the payment of benefits to a Beneficiary when a Participant dies during the Accumulation Period.

## Section 4

## ANNUITY BENEFIT PAYMENT PROVISIONS

**4.01   Annuity Date**

The Annuity Date may be the first day of any calendar month following a Participant's 50th birthday but may not be later than a Participant's 75th birthday. In the absence of an election, the Annuity Date shall be the first day of the month during which the Participant attains age 75.

**4.02   Election to Commence Annuity Benefit Payments**

Any time prior to the Annuity Date a Participant (or Annuitant if other than the Participant) may file a written request with VALIC at its Home Office, on a form furnished by VALIC, to elect one of the Annuity Options listed below. Said request will constitute an election of such Option unless the Participant files a further request in the same manner to change said election.

**4.03   Annuity Options**

The Annuitant may elect to have payments made under any of the Options listed below.

**FIRST OPTION -- Life Annuity --** An annuity payable monthly during the lifetime of an Annuitant, ceasing with the last monthly payment due prior to the death of the Annuitant.

**SECOND OPTION -- Life Annuity with 60, 120, or 180 Monthly Payments Guaranteed --** An annuity payable monthly during the lifetime of an Annuitant with a guarantee that if, at the death of the Annuitant, payments have been made for less than the number of months selected, payments will be continued thereafter to a Beneficiary designated by the Annuitant during the remainder of the certain period.

THIRD OPTION – Cash Refund Life Annuity -- An annuity payable monthly during the lifetime of the Annuitant, ceasing with the last monthly payment due prior to the death of the Annuitant. At the death of the Annuitant, the Beneficiary may receive an additional payment. The additional payment, if any, is equal to the Annuity Value of the Participant's Account at the Annuity Date which has not previously been paid out in the form of annuity benefit payments.

FOURTH OPTION – Joint and Last Survivor Annuity -- An annuity payable during the joint lifetime of the Annuitant and a designated second person and continuing during the lifetime of the survivor.

FIFTH OPTION -- Payments for a Designated Period – Payments made monthly for a selected number of years between three and fifteen. At any time during such period the Annuitant may elect to receive in one sum the present value of the remaining payments computed at an interest rate of 3 1/2% per annum. If the election to receive the present value is made, the Surrender Charge will be applied to Purchase Payments received within 60 months of the time of the election.

### 4.04    Automatic Annuity Option

If the Annuitant does not elect one of the Options prior to the Annuity Date, annuity benefit payments will be made in accordance with the Second Option, with payments being guaranteed for a ten year period, unless said Option is contrary to provisions in the Contract Owner's retirement plan.

### 4.05    Minimum Annuity Benefit Payment

No election of any Option may be made unless an annuity benefit payment of at least $25 would be provided.

### 4.06    Frequency of Annuity Benefit Payments

Annuity benefit payments will be made monthly. If such payments would amount to less than $25 each, VALIC reserves the right to make less frequent payments. If at any time the annual rate of payment to any payee is less than $100, VALIC may make a lump sum payment of the remaining value to the payee.

### 4.07    Betterment of Rates

If it would produce greater benefits, the amount of the Annuitant's monthly payment will be the monthly payment produced by a then currently issued immediate annuity. The immediate annuity shall be of the same form. It shall have a single stipulated payment equal to the Annuity Value being applied under this Contract. Any commuted values allowed under the settlement provisions will be determined on the basis of the interest rate used to determine the net single premium for such annuities.

### 4.08    Annuity Tables

The following tables show the amount required to purchase a first monthly payment of $1.00. The Tables are based on the Progressive Annuity Table with interest at the rate of 3 1/2% per year and assume births in the year 1900. The amount applied to effect an annuity will be the Annuity Value on the tenth day immediately preceding the date the first payment is due. The amount of each payment will depend upon the Annuitant's sex and the Annuitant's adjusted age at the time the first payment is due. Adjusted age shall be determined in accordance with the following:

| Calendar Year of Birth | Adjusted Age is Actual Age |
|---|---|
| Before 1916 | Minus 0 |
| 1916 - 1935 | minus 1 |
| 1936 - 1955 | minus 2 |
| After  1955 | minus 3 |

Actual Age, as used above, shall mean the age at the nearest birthday at the time the first payment is due.

GFA-582

CV0GXST6

## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
## WITH A FIRST MONTHLY PAYMENT OF $1.00

Options 1, 2, and 3 - Single Life Annuities

| Adjusted Age | | Monthly Payments Guaranteed | | | | |
|---|---|---|---|---|---|---|
| Male | Female | None | 60 | 120 | 180 | Cash Refund |
| 50 | 54 | $210.85 | $211.36 | $213.06 | $216.23 | $220.90 |
| 51 | 55 | 206.73 | 207.30 | 209.18 | 212.68 | 217.38 |
| 52 | 56 | 202.54 | 203.17 | 205.26 | 209.12 | 213.91 |
| 53 | 57 | 198.27 | 198.97 | 201.28 | 205.55 | 210.30 |
| 54 | 58 | 193.93 | 194.70 | 197.26 | 201.96 | 206.62 |
| 55 | 59 | 189.51 | 190.37 | 193.20 | 198.39 | 202.99 |
| 56 | 60 | 185.03 | 185.98 | 189.11 | 194.82 | 199.23 |
| 57 | 61 | 180.48 | 181.54 | 185.00 | 191.28 | 195.40 |
| 58 | 62 | 175.87 | 177.04 | 180.87 | 187.77 | 191.64 |
| 59 | 63 | 171.21 | 172.50 | 176.73 | 184.31 | 187.75 |
| 60 | 64 | 166.49 | 167.93 | 172.59 | 180.91 | 183.78 |
| 61 | 65 | 161.73 | 163.32 | 168.47 | 177.58 | 179.90 |
| 62 | 66 | 156.93 | 158.69 | 164.37 | 174.34 | 175.90 |
| 63 | 67 | 152.09 | 154.05 | 160.30 | 171.19 | 171.81 |
| 64 | 68 | 147.23 | 149.40 | 156.28 | 168.16 | 167.86 |
| 65 | 69 | 142.35 | 144.75 | 152.31 | 165.25 | 163.76 |
| 66 | 70 | 137.46 | 140.11 | 148.42 | 162.48 | 159.58 |
| 67 | 71 | 132.57 | 135.50 | 144.62 | 159.86 | 155.59 |
| 68 | 72 | 127.67 | 130.91 | 140.92 | 157.40 | 151.42 |
| 69 | 73 | 122.79 | 126.37 | 137.32 | 155.12 | 147.16 |
| 70 | 74 | 117.93 | 121.89 | 133.86 | 153.01 | 143.19 |
| 71 | 75 | 113.11 | 117.47 | 130.54 | 151.09 | 138.97 |
| 72 | 76 | 108.32 | 113.13 | 127.37 | 149.36 | 134.66 |
| 73 | 77 | 103.57 | 108.88 | 124.37 | 147.82 | 130.74 |
| 74 | 78 | 98.89 | 104.73 | 121.55 | 146.46 | 126.52 |
| 75 | 79 | 94.27 | 100.69 | 118.92 | 145.29 | 122.18 |

Option 4 - Joint and Last Survivor Annuity

| Adjusted Age of Secondary Annuitant | | Adjusted Age of Annuitant | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Male | Female | M-51 F-55 | M-56 F-60 | M-58 F-62 | M-61 F-65 | M-63 F-67 | M-66 F-70 | M-71 F-75 |
| 50 | 54 | $237.79 | $229.86 | $227.15 | $223.59 | $221.57 | $218.92 | $215.73 |
| 55 | 59 | 229.05 | 218.34 | 214.55 | 209.38 | 206.35 | 202.42 | 197.39 |
| 57 | 61 | 225.97 | 214.14 | 209.85 | 204.01 | 200.50 | 195.93 | 190.01 |
| 60 | 64 | 221.91 | 208.43 | 203.38 | 196.39 | 192.18 | 186.50 | 179.02 |
| 62 | 66 | 219.55 | 204.99 | 199.50 | 191.72 | 186.96 | 180.56 | 171.88 |
| 65 | 69 | 216.52 | 200.49 | 194.31 | 185.42 | 179.85 | 172.21 | 161.64 |
| 70 | 74 | 212.71 | 194.65 | 187.42 | 176.84 | 170.06 | 160.43 | 146.43 |

Option 5 - Payments for a Designated Period

| Years of Payment | | Years of Payment | |
|---|---|---|---|
| 3 | $ 34.26 | 10 | $101.73 |
| 4 | 44.90 | 11 | 110.01 |
| 5 | 55.19 | 12 | 118.20 |
| 6 | 65.15 | 13 | 125.94 |
| 7 | 74.74 | 14 | 133.51 |
| 8 | 84.03 | 15 | 140.85 |
| 9 | 93.02 | | |

## DEATH PAYMENT AND BENEFICIARY PROVISIONS

**.01   Death of Participant Prior to the Annuity Date**

If a Participant dies during the Accumulation Period, there will be an amount payable to the Beneficiary equal to the greater of (a) the Annuity Value on the date VALIC receives a certified copy of the death certificate or (b) 100% of Purchase Payments reduced by the amount deducted in connection with any partial surrenders.

The Beneficiary may elect within 60 days after amounts would be payable to receive the death payment as a lump sum settlement or in the form of any of the Annuity Options. The Beneficiary will thereafter be entitled to exercise all rights which an Annuitant would have during the Annuity Period, subject to the same terms and conditions.

**.02   Death of Annuitant During Annuity Period**

If an Annuitant dies during the Annuity Period, a Beneficiary may be entitled to receive payment. If so, the Beneficiary may, within 60 days after amounts would be payable, elect one of the following three alternatives. These alternatives are not available if the Annuitant had been receiving payments under the Fourth Option.

- elect to receive in a lump sum the present value computed at an interest rate of 3 1/2% per annum, of any remaining annuity benefit payments; or
- elect to continue receiving annuity benefit payments; or
- elect to have the value of any annuity benefit payments owed applied to any of the five Annuity Options. If the Beneficiary elects either to continue receiving annuity benefit payments, or to receive the value of such payments under one of the five Annuity Options, the Beneficiary is entitled to exercise all rights hereunder.

**.03   Beneficiary Designation**

The Annuitant may change any Beneficiary designation during the Annuitant's life. An irrevocably designated Beneficiary can be changed only with that Beneficiary's written consent. Any new designation must be filed in writing with VALIC at its Home Office. Upon receipt, the notice shall take effect as of its signature date. It shall be subject to any action taken by VALIC prior to receipt.

Unless otherwise provided, proceeds will be distributed in accordance with the following provisions. Two or more Beneficiaries living at the Annuitant's death shall share the proceeds equally. If any of two or more Beneficiaries die before the Annuitant, all proceeds shall be payable to any surviving Beneficiary(ies). If no named Beneficiary is living at the Annuitant's death, the proceeds shall be payable to the Annuitant's estate. If the Beneficiary dies at the same time as the Annuitant, rights to the proceeds shall be determined as though he or she died before the Annuitant. The Beneficiary's death shall be deemed at the same time as the Annuitant's if it occurs within 15 days of the Annuitant's death. Proof of survival for that period may be required by VALIC from any person entitled to payment. If the Beneficiary dies while receiving payments under the Second or Fifth Options the value of remaining payments, if any, shall be paid to the estate of said Beneficiary.

### Section 6

### GENERAL PROVISIONS

**.01   The Contract**

The Contract and the application shall constitute the entire contract between the parties. All statements made by the Contract Owner or by any Participant or Annuitant shall be deemed representations. Such statements shall not be deemed warranties. Only the President or a Vice President of VALIC has the authority to change the Contract. Any such changes shall be effective only if in writing.

**.02   Participant Certificates**

VALIC shall issue Certificates for delivery to each Participant. Each Certificate shall set forth the benefits to which a Participant is entitled under the Contract and the Beneficiary entitled to receive payment on the Participant's death. Certificates shall not constitute a part of the Contract.

**.03   Misstatement of Age or Sex**

If an Annuitant's age or sex has been misstated, or that of any Beneficiary under a settlement option which conditions payment upon the Beneficiary's survival, any amount payable by VALIC shall be such as would have been provided on the basis of the correct information. If a correction of age or sex is made while payments are being made hereunder, the amount of any underpayment by VALIC shall be paid in full with the next payment due. The amount of any overpayment by VALIC shall be deducted from amounts otherwise payable thereafter.

OVOGXST8

If any payment(s) is(are) conditioned upon a payee's survival, VALIC will require proof of the payee's age. No payment shall be due until due proof is received by VALIC at its Home Office.

**6.04    Changes of Contract by VALIC**

On the first day of the second or any subsequent Contract Year, VALIC may, upon 90 days written notice to the Contract Owner, change any or all of the terms of the Contract. Any such change will not affect the provisions of the Contract as they apply to Purchase Payments on behalf of Participants covered prior to the effective date of such change.

**6.05    Changes of Contract by Mutual Agreement**

The Contract Owner and VALIC, by agreement in writing, may change any or all of the terms of the Contract in order to comply with applicable laws or regulations, including federal income tax law. Consent of any Participant or Beneficiary shall not be required for any such change.

**6.06    Assignments**

Neither the Contract nor a Participant's rights hereunder may be sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or otherwise transferred to any person other than VALIC. Unless contrary to applicable law, including federal tax law, the values hereunder shall not be subject to any creditor claims.

**6.07    Termination or Suspension of the Contract**

The Contract will terminate when performance by VALIC of its duties and obligations hereunder have been completed.

The Contract may be suspended on the first day of the second or any subsequent Contract Year. Effective with such suspension no new Participants will be accepted, however additional Purchase Payments will be accepted for those Participants covered hereunder prior to the effective date of such suspension.

**6.08    Deferment of Withdrawal**

VALIC may defer payment of any partial or total surrender. Any such deferral shall not exceed six months from the receipt, at VALIC's Home Office, of the surrender form. Interest shall be paid at a rate determined by VALIC if payment is deferred for thirty (30) days or more.

**6.09    Incontestability**

The provisions of the Contract shall not be contested after it has been in force for two years from the issue date. No statement made by any Annuitant shall be contested after two years from the date that the Annuitant was first covered hereunder.

**6.10    Reports to Participants**

VALIC will mail to each Participant, at least annually each Certificate Year during the Accumulation Period, a statement reporting the Annuity Value of the Participant's Account.

**6.11    Minimum Benefits, Payments and Values**

Any paid-up annuity, cash surrender, or death payment available hereunder shall not be less than the minimum benefits required by any statute of the state in which the Contract is delivered.

**6.12    Non-Participating**

The Contract is non-participating and does not share in the profits or surplus of VALIC.

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
## Houston, Texas

## WEST VIRGINIA OPTIONAL RETIREMENT PROGRAM ENDORSEMENT

This Endorsement is made a part of the Contract or Certificate.

Section 2.03 (Surrender Value) is amended by adding the following:

A) Except as provided in (B) below, in the case of a withdrawal for transfer to another funding entity only 20% of the Surrender Value may be withdrawn once a year.

A Participant may choose to have the Surrender Value withdrawn for transfer in one of the following ways:

(1) Five Year Equal Annual Installment Method. The interest rate during the five year payout period will be declared in advance by VALIC. No other withdrawals may be made once payments begin.

(2) Decreasing Balance Method. 1/5 of the account balance the first year. 1/4 of the remaining balance the second year. 1/3 of the remaining balance the third year. 1/2 of the remaining balance the fourth year. The entire remaining balance the fifth year. Interest under this method will be credited at a rate determined by VALIC. Withdrawals may be made under this method.

B) The 20% a year restriction of this section does not apply if:

(1) The Surrender Value remaining would be less than $500, or;

(2) The withdrawal is for transfer to the funding entity for West Virginia ORP Common Stock Fund or the West Virginia ORP Bond Fund.

Section 3.02 is deleted. There will be no surrender charges under this Contract. The account Surrender Value is equal to the Annuity Value.

Section 5.03 (Beneficiary Designation) is replaced with the following:

The Annuitant may change any Beneficiary during the Annuitant's life. Any change must be filed in writing with the West Virginia State Teacher's Retirement System. Any beneficiary designation not filed under the West Virginia State Teacher's Retirement System will not be honored even if received by VALIC at VALIC's Home Office.

Proceeds will be distributed in accordance with the following provisions. Two or more Beneficiaries living at the Annuitant's death shall share the proceeds equally. If any of two or more Beneficiaries die before the Annuitant, all proceeds shall be paid to any surviving Beneficiary(ies). If no named Beneficiary is living at the Annuitant's death, the proceeds shall be paid to the Annuitant's estate. If the Beneficiary dies at the same time as the Annuitant, rights to the proceeds shall be determined as though he or she died before the Annuitant. The Beneficiary's death shall be deemed at the same time as the Annuitant's if it occurs within 15 days of the Annuitant's death. Proof of survival for that time may be required by VALIC from any person entitled to payment. If the Beneficiary dies while receiving payments under the Second or Fifth Options, the value of remaining payments, if any, shall be paid to the estate of said Beneficiary.

The effective date of this Endorsement is the Policy Issue Date.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: _____

William A. Wilson
Vice President and General Counsel

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
## Houston, Texas

### ENDORSEMENT

Made a part of the Contract or Certificate to which it is attached.

The Annuity Tables of the Contract or Certificate are amended for Contract accumulations on or after July 1, 1987.

The following tables show the dollar amount required to purchase an annuity with a first monthly payment of $1.00. The Tables are computed by using an interest rate of 3 1/2% per year and a mortality table produced from the 1983 Table a. The amount applied to effect an annuity will be the Annuity Value on the tenth day prior to the date the first payment is due. The amount of each payment will be based on the Annuitant's age at the birthday nearest to the time the first payment is due.

If it would yield greater benefits for Fixed Annuities, the amount of the Annuitant's monthly payment will be the monthly payment produced by a then currently issued immediate annuity of the same form.

## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
## WITH A FIRST MONTHLY PAYMENT OF $1.00

Options A(1), B(2), and C(3) -- Single Life Annuities

| Age | None | Monthly Payments Guaranteed 60 | 120 | 180 | Cash Refund |
|-----|------|------|------|------|-------------|
| 50 | $ 233.36 | $ 233.71 | $ 234.82 | $ 236.75 | $ 240.70 |
| 51 | 229.87 | 230.25 | 231.45 | 233.54 | 237.65 |
| 52 | 226.30 | 226.72 | 228.01 | 230.29 | 234.54 |
| 53 | 222.65 | 223.10 | 224.51 | 226.98 | 231.36 |
| 54 | 218.93 | 219.41 | 220.93 | 223.62 | 228.12 |
| 55 | 215.11 | 215.64 | 217.28 | 220.22 | 224.82 |
| 56 | 211.21 | 211.78 | 213.57 | 216.77 | 221.45 |
| 57 | 207.23 | 207.84 | 209.79 | 213.28 | 218.02 |
| 58 | 203.15 | 203.81 | 205.94 | 209.76 | 214.53 |
| 59 | 198.98 | 199.70 | 202.03 | 206.21 | 210.96 |
| 60 | 194.73 | 195.51 | 198.06 | 202.64 | 207.33 |
| 61 | 190.38 | 191.24 | 194.04 | 199.05 | 203.63 |
| 62 | 185.95 | 186.90 | 189.97 | 195.47 | 199.85 |
| 63 | 181.45 | 182.50 | 185.86 | 191.89 | 195.99 |
| 64 | 176.88 | 178.03 | 181.73 | 188.35 | 192.18 |
| 65 | 172.25 | 173.52 | 177.57 | 184.84 | 188.25 |
| 66 | 167.56 | 168.95 | 173.41 | 181.39 | 184.24 |
| 67 | 162.81 | 164.34 | 169.24 | 178.00 | 180.31 |
| 68 | 158.01 | 159.70 | 165.09 | 174.70 | 176.25 |
| 69 | 153.16 | 155.01 | 160.95 | 171.49 | 172.11 |
| 70 | 148.26 | 150.30 | 156.85 | 168.40 | 168.10 |
| 71 | 143.31 | 145.57 | 152.79 | 165.44 | 163.94 |
| 72 | 138.33 | 140.83 | 148.81 | 162.62 | 159.70 |
| 73 | 133.32 | 136.10 | 144.91 | 159.98 | 155.66 |
| 74 | 128.31 | 131.39 | 141.11 | 157.51 | 151.45 |
| 75 | 123.30 | 126.73 | 137.44 | 155.22 | 147.15 |

## Option D(4) -- Joint and Survivor Life Annuity

| Younger Annuitant: Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | $256.95 | $258.82 | $260.70 | $262.61 | $264.53 | $256.46 | $268.39 | $270.33 | $272.26 | $274.19 | $276.10 |
| 51 | 253.87 | 255.79 | 257.73 | 259.69 | 261.67 | 263.66 | 265.66 | 267.66 | 269.65 | 271.64 | 273.61 |
| 52 | 250.69 | 252.67 | 254.67 | 256.69 | 258.73 | 260.78 | 262.84 | 264.90 | 266.96 | 269.00 | 271.04 |
| 53 | 247.42 | 249.45 | 251.52 | 253.60 | 255.70 | 257.81 | 259.93 | 262.06 | 264.18 | 266.29 | 268.39 |
| 54 | 244.06 | 246.15 | 248.27 | 250.41 | 252.58 | 254.75 | 256.94 | 259.13 | 261.31 | 263.49 | 265.66 |
| 55 | 240.59 | 242.75 | 244.93 | 247.14 | 249.36 | 251.60 | 253.85 | 256.11 | 258.36 | 260.61 | 262.85 |
| 56 | 237.03 | 239.25 | 241.49 | 243.76 | 246.05 | 248.36 | 250.68 | 253.00 | 255.32 | 257.64 | 259.94 |
| 57 | 233.37 | 235.64 | 237.95 | 240.29 | 242.65 | 245.02 | 247.41 | 249.80 | 252.19 | 254.57 | 256.95 |
| 58 | 229.60 | 231.94 | 234.31 | 236.72 | 239.14 | 241.59 | 244.04 | 246.50 | 248.96 | 251.42 | 253.87 |
| 59 | 225.73 | 228.13 | 230.57 | 233.04 | 235.54 | 238.05 | 240.58 | 243.11 | 245.64 | 248.17 | 250.70 |
| 60 | 221.75 | 224.22 | 226.72 | 229.26 | 231.83 | 234.41 | 237.01 | 239.62 | 242.23 | 244.83 | 247.43 |
| 61 | 217.66 | 220.19 | 222.77 | 225.38 | 228.02 | 230.68 | 233.35 | 236.03 | 238.71 | 241.39 | 244.07 |
| 62 | 213.47 | 216.07 | 218.71 | 221.39 | 224.10 | 226.83 | 229.58 | 232.34 | 235.10 | 237.86 | 240.61 |
| 63 | 209.17 | 211.84 | 214.55 | 217.30 | 220.08 | 222.89 | 225.71 | 228.55 | 231.39 | 234.23 | 237.05 |
| 64 | 204.78 | 207.50 | 210.28 | 213.10 | 215.96 | 218.84 | 221.74 | 224.66 | 227.57 | 230.49 | 233.40 |
| 65 | 200.28 | 203.07 | 205.91 | 208.80 | 211.73 | 214.69 | 217.67 | 220.66 | 223.66 | 226.66 | 229.65 |
| 66 | 195.69 | 198.54 | 201.45 | 204.40 | 207.40 | 210.43 | 213.49 | 216.57 | 219.65 | 222.73 | 225.80 |
| 67 | 191.01 | 193.92 | 196.89 | 199.91 | 202.98 | 206.08 | 209.22 | 212.37 | 215.53 | 218.70 | 221.86 |
| 68 | 186.24 | 189.21 | 192.24 | 195.33 | 198.46 | 201.64 | 204.84 | 208.07 | 211.32 | 214.56 | 217.81 |
| 69 | 181.38 | 184.41 | 187.50 | 190.65 | 193.85 | 197.10 | 200.38 | 203.68 | 207.00 | 210.33 | 213.66 |
| 70 | 176.44 | 179.52 | 182.68 | 185.89 | 189.16 | 192.47 | 195.82 | 199.20 | 202.60 | 206.01 | 209.42 |
| 71 | 171.42 | 174.55 | 177.77 | 181.04 | 184.37 | 187.75 | 191.17 | 194.62 | 198.10 | 201.59 | 205.08 |
| 72 | 166.33 | 169.51 | 172.78 | 176.11 | 179.51 | 182.95 | 186.44 | 189.96 | 193.51 | 197.07 | 200.65 |
| 73 | 161.17 | 164.40 | 167.71 | 171.10 | 174.56 | 178.07 | 181.63 | 185.22 | 188.83 | 192.47 | 196.12 |
| 74 | 155.97 | 159.22 | 162.58 | 166.02 | 169.53 | 173.11 | 176.73 | 180.39 | 184.08 | 187.79 | 191.51 |
| 75 | 150.73 | 154.01 | 157.39 | 160.87 | 164.44 | 168.07 | 171.75 | 175.48 | 179.24 | 183.02 | 186.82 |

## Option E(5) -- Payment for a Designated Period

| Years of Payment | | Years of Payment | |
| --- | --- | --- | --- |
| 1 | $ 11.81 | 9 | $ 93.02 |
| 2 | 23.23 | 10 | 101.73 |
| 3 | 34.26 | 11 | 110.01 |
| 4 | 44.90 | 12 | 118.20 |
| 5 | 55.19 | 13 | 125.94 |
| 6 | 65.15 | 14 | 133.51 |
| 7 | 74.74 | 15 | 140.85 |
| 8 | 84.03 | | |

For Contract accumulations between August 1, 1983 and June 30, 1987, annuity payments will be the monthly payments based on the male rates under the Annuity Tables in the Contract or Certificate.

The effective date of this Endorsement is the Policy Issue Date.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: *Stephen G. Kellison*

Stephen G. Kellison
Vice President and Chief Actuary

SMOCMST2

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
## HOUSTON, TEXAS

## TAX REFORM ACT OF 1986 ENDORSEMENT

This Endorsement is part of Contracts or Certificates issued for retirement plans and annuity contracts. These plans and contracts are subject to special Internal Revenue Code ("Code") requirements.

Section references are to the Code in effect on January 1, 1989. The term "Participant" includes the Contractholder, Certificateholder, or Annuitant. The term "Contributions" includes Purchase Payments. The following provisions are part of the "plan", if so required. Notwithstanding other Contract or Certificate provisions, the following applies as required by the Code.

1. **Minimum Payments After Age 70 1/2.**

The following rules apply to Contracts and Certificates issued under these programs: a section 401(a), 401(k), or 403(a) pension plan, 403(b) tax deferred annuity, a 457 deferred compensation plan, or a 408(b) individual retirement annuity.

Payments from this Contract will comply with section 401(a)(9). Annuity payments or yearly minimum payments are generally required after the Participant is age 70 1/2 or death. The rules of section 401(a)(9) are made a part of this Contract.

The yearly payment amount is set each year. These payments are based on life expectancy. The life expectancies of the Participant and Beneficiary will be computed each year. The Participant may instead elect to use the life expectancies at the first payment only. (The election may be made for self, for a spouse Beneficiary, or for both.)

If the Participant dies before these payments have begun, a death benefit is payable. The Beneficiary may receive the whole benefit by 5 years after the Participant's death. Otherwise, payments may be made over the life or life expectancy of the Beneficiary if they start within 1 year of death. A spouse Beneficiary may delay payments until the Participant would have been 70 1/2. For 408(b), a spouse may wait until the spouse reaches 70 1/2.

If the Participant dies after these payments start, a death benefit is payable. The benefit must be paid at least as fast as the method used by the Participant.

For 403(b), the rules above apply only to amounts added to the account after December 31, 1986. Pre-January 1, 1987 amounts must begin to be paid when the Participant is age 75. For these older 403(b) amounts, payments must meet the following rule. The present value of payments to the Participant, over life, must exceed 50% of the present value of all payments. This 50% rule will not apply to joint annuities if the spouse is the named survivor.

2. **Contribution Limits.**

For 403(b), the following Contribution rules will apply.

Elective contributions under section 402(g) (usually made by salary reduction) are allowed only under the following condition. A Participant's elective Contributions under all the employer's plans cannot exceed the section 402(g)(1) limit for that calendar year.

Elective Contributions can be made hereunder only under the following condition. All employees of the employer must be able to make such elective Contributions. The employer may require a yearly minimum of at least $200.

3. **Withdrawal Restrictions before Age 59 1/2.**

For 403(b), the following distribution rules will apply.

The portion of an account made up of elective Contributions and the income thereon, cannot be paid out unless the following has occurred. The Participant is (i) 59 1/2, (ii) separated from service with the employer, (iii) deceased, (iv) disabled, or (v) incurring a hardship.

The term "disabled" shall mean an individual who is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof the existence thereof in such form and manner as the Secretary may require.

These payment rules do not apply to amounts credited to the Participant's account on December 31, 1988. Such amounts can be paid in 1989 and later years. All payments are subject to the employer's plan terms under which this Contract or Certificate was purchased.

If hardship occurs, only Contributions may be paid out; income on those Contributions cannot be paid. Hardship payments will be made only if the need meets the following standard. There must be an immediate and heavy financial need of the Participant and the payment must be required to meet that need. The decision will be based on legal requirements and on the Participant's statements at the time of the request.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: _____

William A. Wilson
Vice President and General Counsel

DC0CBST2

## NOTICE CONCERNING COVERAGE

## LIMITATIONS AND EXCLUSIONS UNDER THE WEST VIRGINIA

## LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of West Virginia who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the West Virginia Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

> **The West Virginia Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in West Virginia. You should not rely on coverage by the West Virginia Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. For a complete description of coverage, consult Article 26A, Chapter 33 of the West Virginia Code.**
>
> **Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk.**
>
> **Insurance companies or their agents are required by law to give or send you this notice. HOWEVER, INSURANCE COMPANIES AND THEIR AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE GUARANTY ASSOCIATION TO INDUCE YOU TO PURCHASE ANY KIND OF INSURANCE POLICY.**
>
> **The Guaranty Association or the West Virginia Insurance Commission will respond to questions you may have which are not answered by this document. Policyholders with additional questions may contact:**
>
> **West Virginia Life and Health Insurance Guaranty Association**
> **P.O. Box 816**
> **Huntington, West Virginia 25712**
>
> **West Virginia Insurance Commissioner**
> **Consumer Services Division**
> **2019 Washington Street, East**
> **P. O. Box 50540**
> **Charleston, West Virginia 25305-0540**
> **(304) 558-3386**
> **Toll Free 1-800-642-9004**
> **TDD 1-800-435-7381**

The state law that provides for this safety-net coverage is called the West Virginia Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.

## COVERAGE

Generally, individuals will be protected by the West Virginia Life and Health Insurance Guaranty Association if they live in West Virginia and hold a life or health insurance contract, annuity contract, unallocated annuity contract, or if they are insured under a group life, health or annuity insurance contract, issued by a member insurer. Member insurer also includes non-profit service corporations (W. Va. Code Sec. 33-24) and health care corporations (W. Va. Code Sec. 33-25). The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- the policy was issued at a time when the insurer was not licensed or authorized to do business in the state;
- their policy was issued by an HMO, a fraternal benefit society, mandatory state pooling plan, a mutual protective association or similar plan in which the policy holder is subject to future assessments, an insurance exchange, or any entity similar to the above.

The association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual or contractholder has assumed the risk;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contractholder;
- employer or association plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them) or uninsured, including:
  - i.   multiple employer welfare arrangement;
  - ii.   minimum premium group insurance plan;
  - iii.   stop loss group insurance plan; or
  - iv.   administrative services only contract.
- any unallocated annuity contract issued to an employee benefit plan protected under the federal pension guaranty corporation;
- any portion of any unallocated contract which is not issued to or in connection with a specific employee, union or association's benefit plan or a governmental lottery.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out: The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

**Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the act:** for unallocated annuities that fund governmental retirement plans under Sec. 401(k), 403(b) or 457 of the Internal Revenue Code, the limit is $150,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual; for covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contract holder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

DC0CBWV2

# VALIC

## Master Application Form



### THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

*Please print clearly, do not highlight or write in margins.*

## APPLICATION FOR CONTRACT FORM (check one)

☒ Fixed – Group Fixed annuity (V-Plan) ......................................... GFA-582

☐ Fixed/Variable – Group Unit Investment Trust Annuity ............... UITG-585
　　　(Independence Plus)

☐ Fixed/Variable – Group Unit Purchase Annuity (GUP) .............. GUP64/74

☐ Other: _____

## APPLICANT

☐ Employer  *OR*

☒ Other: __West Virginia Investment Management Board__

Name: __West Virginia Investment Management Board__

Tax I.D. #: __31-1526159__

Address: __500 Virginia St., East, Suite 200__

City: __Charleston__

State: __WV__　　　　ZIP: __25301__

Telephone #: __304-345-2672__

## OWNERSHIP/CONTROL

For Deferred Compensation:

For other Plan Types (choose one):

　☐ Employer

　☒ Trustee

　☐ Other: _____

## TYPE OF PLAN (choose one)

☐ 403(b) Voluntary Deferred Annuity

☐ 403(b) State Optional Retirement Plan

☐ 403(b) Employer Retirement Plan

☐ Deferred Compensation Plan (choose one):

　☐ 457(b) Public Employer

　☐ 457(b) Private Non-Profit

　☐ Other: _____

☒ 401(a) or 403(a) Employer Retirement Plan

☐ 401(a) or 403(a) Self Employed Retirement Plan

☐ Other: _____

Name of Plan: __West Virginia Teachers Retirement System__

VA 2899 VER 10/99

## TYPE OF ORGANIZATION (choose one)

☐ PS 　– Public Educational Institutions

☐ NP 　– Non-Profit Organizations (choose one):

　　　☐ 501(c)(3) - Attach IRS determination letter

　　　☐ Other

☐ PFP 　– Private For-Profit Organizations

☒ SLGOV – State and Local Governments

☐ SELF 　– Self Employed Individuals

Nature of Business: _____

_____

_____

## ADDITIONAL INFORMATION/REQUESTS

_____

_____

_____

_____

_____

_____

## STATEMENTS AND AGREEMENTS　　NOT APPLICABLE

~~A current prospectus for the Company's Separate Account for the contract was provided with this application. Also, a current prospectus was provided for each Fund allowed to receive purchase payments. The prospectus for the Separate Account provides sales expenses and other data. It is understood that annuity payments (and termination values, if any) provided by the contract applied for are variable and not guaranteed as to dollar amount when based on the investment experience of the Company's Separate Account.~~

Dated at (City, State) __Charleston, WV__

Applicant Signature　　　　　Date __11/6/08__

__Executive Director__
__West Virginia Investment Management Board__
Applicant Title　　　　　Employer Client #

Agent Signature __James R. Eckbracth__　　　Date __11-6-08__

Print Agent Name __JAMES R. ECKBRATH__　　State License # __42754__

Manager Signature __James R. Eckbracth__　　Date __11-6-08__

**AIG** VALIC

The Variable Annuity Life Insurance Company
*Member of American International Group, Inc.*

In consideration of the application for this contract, (the "Contract"), and the Purchase Payments THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, ("VALIC"), agrees to:

- allocate the Purchase Payments to Participants' Accounts as directed by the Contract Owner,

- pay the annuity benefits as provided in the Contract, and

- provide the Contract Owner, the Participants and the Beneficiaries with the rights and benefits contained in the Contract.

The conditions and provisions on this and the following pages are made a part of the Contract. All conditions and provisions are subject to applicable state laws.

Executed at VALIC's Home Office on the issue date.

*Mary T. Cavanaugh*
(Secretary)

*Bruce Abram*
(President)

SPECIMEN

**CONTRACT OWNER:**

**GROUP ACCOUNT NUMBER:**                                        **DATE OF ISSUE:**

**GROUP FIXED ANNUITY CONTRACT
INDIVIDUAL ALLOCATIONS
NON-PARTICIPATING**

GFA-582

2929 Allen Parkway • Houston, TX 77019-2155                    VPLNGCB100

THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK.

SPECIMEN

VPLNGCB100

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Section 1 | **Definitions** | 4 |
| Section 2 | **Purchase Payments and Valuation Provisions** | 4 |
|  | 2.01 Purchase Payments | 4 |
|  | 2.02 Annuity Value | 4 |
|  | 2.03 Surrender Value | 4 |
|  | 2.04 Minimum Annuity Value | 4 |
|  | 2.05 Suspension of Purchase Payments | 4 |
| Section 3 | **Charges  Under the Contract** | 5 |
|  | 3.01 Charge for Premium Taxes | 5 |
|  | 3.02 Charge for Partial and Total Surrenders | 5 |
| Section 4 | **Annuity Benefit Payment Provision** | 5 |
|  | 4.01 Annuity Date | 5 |
|  | 4.02 Election to Commence Annuity Benefit Payments | 5 |
|  | 4.03 Annuity Options | 5 |
|  | 4.04 Automatic Annuity Option | 6 |
|  | 4.05 Minimum Annuity Benefit Payment | 6 |
|  | 4.06 Frequency of Annuity Benefit Payments | 6 |
|  | 4.07 Betterment of Rates | 6 |
|  | 4.08 Annuity Tables | 6 & 7 |
| Section 5 | **Death Payment and Beneficiary Provisions** | 8 |
|  | 5.01 Death of Participant Prior to the Annuity Date | 8 |
|  | 5.02 Death of Annuitant During the Annuity Period | 8 |
|  | 5.03 Beneficiary Designation | 8 |
| Section 6 | **General Provisions** | 8 |
|  | 6.01 The Contract | 8 |
|  | 6.02 Participant Certificate | 8 |
|  | 6.03 Misstatement of Age or Sex | 8 |
|  | 6.04 Changes of Contract by VALIC | 9 |
|  | 6.05 Changes of Contract by Mutual Agreement | 9 |
|  | 6.06 Assignments | 9 |
|  | 6.07 Termination or Suspension of the Contract | 9 |
|  | 6.08 Deferment of Withdrawal | 9 |
|  | 6.09 Incontestability | 9 |
|  | 6.10 Reports to Participants | 9 |
|  | 6.11 Minimum Benefits, Payments and Values | 9 |
|  | 6.12 Non-Participating | 9 |

SPECIMEN

GFA-582

VPLNGCB100

## DEFINITIONS

**1.01   Accumulation Period** -- the period between the date of the first Purchase Payment and the Annuity Date for a Participant.

**1.02   Annuitant** -- the Participant upon whose life annuity benefits will be based and to whom annuity benefits will be paid. If the Participant dies prior to the Annuity Date, the Beneficiary may be treated as the Annuitant.

**1.03   Annuity Date** -- the date on which annuity benefit payments begin.

**1.04   Annuity Period** -- the period during which annuity benefits are being paid.

**1.05   Beneficiary** -- the person designated to receive payments, if any, on the Annuitant's death.

**1.06   Certificate Year** -- a twelve month period which commences with the issue date of a Participant's Certificate and each anniversary of that date.

**1.07   Contract Owner** -- the employer, or other organization, which makes application for the Contract.

**1.08   Contract Year** -- a twelve month period which commences with the issue date of the Contract and each anniversary of that date.

**1.09   Home Office** -- of VALIC shall mean its main office located at 2929 Allen Parkway, Houston, Texas 77019.

**1.10   Net Purchase Payment** -- a Purchase Payment less any applicable premium taxes.

**1.11   Participant** -- a person who makes Purchase Payments or for whom Purchase Payments are made under the Contract.

**12   Participant's Account** -- an individual account which is established for a Participant to record the Annuity Value (Section 2.02) for the Participant.

**1.13   Purchase Payments** -- amounts paid to VALIC by, or on behalf of, Participants.

### Section 2

## PURCHASE PAYMENT AND VALUATION PROVISIONS

**2.01   Purchase Payments**

Purchase Payments may be paid to VALIC at any time for credit to Participants' Accounts. The amount of Purchase Payments may be determined by the Contract Owner or the Participants; and may be subject to the provisions of the Contract Owner's Retirement Plan and/or the Internal Revenue Code of 1954, as amended. Purchase Payments for a Participant will only be accepted during his or her lifetime and the Contract Owner shall designate the amount of each Purchase Payment to be allocated to respective Participants' Accounts.

**2.02   Annuity Value**

The Annuity Value allocated to a Participant during the Accumulation Period shall be equal to the Net Purchase Payments received for the Participant, plus any interest credited to the Participant's Account, less the amount deducted from a Participant's Account in connection with any partial surrenders.

During the Accumulation Period, interest will be credited to Participants' Accounts at a rate determined by VALIC. The interest rate shall be set in advance of the period to which it relates and shall not be less than an effective rate of 4 1/2% per year.

**2.03   Surrender Value**

The Surrender Value of a Participant's Account shall be equal to the Annuity Value less any applicable surrender charges. (See Section 3.02)

In the case of a full surrender of a Participant's Account prior to the Annuity Date, the Surrender Value shall never be less than Purchase Payments received for the Participant less any previous partial surrenders.

**2.04   Minimum Annuity Value**

If due to partial surrenders the Annuity Value of a Participant's Account falls below $300, the Participant's Account may be automatically surrendered.

**2.05   Suspension of Purchase Payments**

Purchase Payments to a Participant's Account may be suspended at any time. In the event that additional Purchase Payments are not made, the Annuity Value of the Participant's Account will continue to earn interest. Resumption of Purchase Payments for the Participant may occur at any time prior to the Annuity Date so long as the Participant's Account has not been surrendered and the Contract has not been terminated.

GFA-582                                    SPECIMEN                                    VPLNGCB100

## CHARGES

**3.01    Charge for Premium Taxes**

A deduction is made from Purchase Payments to cover premium taxes, when applicable. Any such deduction will be made either from Purchase Payments when received, or from the amount applied to provide annuity benefits at the time annuity benefit payments commence, depending on applicable state law. If no amount for premium tax was deducted, but tax is subsequently determined to be due, VALIC reserves the right to reduce the Annuity Value or annuity benefit payments by the amount of the tax due at the time such determination is made. If an amount for any premium taxes was deducted but subsequently determined not to be due, VALIC will apply the amount deducted to increase the Annuity Value or annuity benefit payments at the time such determination is made.

**3.02    Charge for Partial and Total Surrenders**

A partial or total surrender of the Annuity Value of a Participant's Account will be subject to a surrender charge equal to the lesser of 7% of (a) all Purchase Payments which have been received for the Participant's Account during the 60 months immediately preceding the surrender, or (b) the amount of the surrender.

For purposes of calculating the surrender charge:

- the 60 months referred to above shall be counted from the day that the surrender request is received at VALIC's Home Office; and

- the most recent Purchase Payments are considered to be withdrawn first.

If no Purchase Payments have been received for a Participant's Account during the most recent 60 months or if a Participant's Account has been in effect for 15 years or longer, then there will be no charge for partial or total surrenders of the Participant's Account.

The first partial surrender per Certificate Year of 10% or less of the Annuity Value of a Participant's Account will not be subject to a surrender charge. However, if the first partial surrender exceeds 10% of the Annuity Value of a Participant's Account, the surrender charge will be applied to the amount in excess of 10%. The second or any subsequent surrenders of a Participant's Account during a Certificate Year will be subject to a surrender charge.

Once a surrender charge has been imposed on any Purchase Payment or portion thereof, that Purchase Payment or portion will not thereafter be considered as a Purchase Payment for purposes of calculating the surrender charge.

The surrender charge is not imposed upon commencement of annuity benefit payments (except in limited cases where the Fifth Option is selected and the right to surrender after annuity benefit payments begin is exercised) or upon any payments received by a Beneficiary in lieu of annuity benefit payments during the Annuity Period. The surrender charge is not imposed on the payment of benefits to a Beneficiary when a Participant dies during the Accumulation Period.

## Section 4

## ANNUITY BENEFIT PAYMENT PROVISIONS

**4.01    Annuity Date**

The Annuity Date may be the first day of any calendar month following a Participant's 50th birthday but may not be later than a Participant's 75th birthday. In the absence of an election, the Annuity Date shall be the first day of the month during which the Participant attains age 75.

**4.02    Election to Commence Annuity Benefit Payments**

Any time prior to the Annuity Date a Participant (or Annuitant if other than the Participant) may file a written request with VALIC at its Home Office, on a form furnished by VALIC, to elect one of the Annuity Options listed below. Said request will constitute an election of such Option unless the Participant files a further request in the same manner to change said election.

**4.03    Annuity Options**

The Annuitant may elect to have payments made under any of the Options listed below.

**FIRST OPTION -- Life Annuity --** An annuity payable monthly during the lifetime of an Annuitant, ceasing with the last monthly payment due prior to the death of the Annuitant.

**SECOND OPTION -- Life Annuity with 60, 120, or 180 Monthly Payments Guaranteed --** An annuity payable monthly during the lifetime of an Annuitant with a guarantee that if, at the death of the Annuitant, payments have been made for less than the number of months selected, payments will be continued thereafter to a Beneficiary designated by the Annuitant during the remainder of the certain period.

GFA-582                                                                                                    VPLNGCB100

**THIRD OPTION -- Cash Refund Life Annuity** -- An annuity payable monthly during the lifetime of the Annuitant, ceasing with the last monthly payment due prior to the death of the Annuitant. At the death of the Annuitant, the Beneficiary may receive an additional payment. The additional payment, if any, is equal to the Annuity Value of the Participant's Account at the Annuity Date which has not previously been paid out in the form of annuity benefit payments.

**FOURTH OPTION -- Joint and Last Survivor Annuity** -- An annuity payable during the joint lifetime of the Annuitant and a designated second person and continuing during the lifetime of the survivor.

**FIFTH OPTION -- Payments for a Designated Period** -- Payments made monthly for a selected number of years between three and fifteen. At any time during such period the Annuitant may elect to receive in one sum the present value of the remaining payments computed at an interest rate of 3 1/2% per annum. If the election to receive the present value is made, the Surrender Charge will be applied to Purchase Payments received within 60 months of the time of the election.

### 4.04    Automatic Annuity Option

If the Annuitant does not elect one of the Options prior to the Annuity Date, annuity benefit payments will be made in accordance with the Second Option, with payments being guaranteed for a ten year period, unless said Option is contrary to provisions in the Contract Owner's retirement plan.

### 4.05    Minimum Annuity Benefit Payment

No election of any Option may be made unless an annuity benefit payment of at least $25 would be provided.

### 4.06    Frequency of Annuity Benefit Payments

Annuity benefit payments will be made monthly. If such payments would amount to less than $25 each, VALIC reserves the right to make less frequent payments. If at any time the annual rate of payment to any payee is less than $100, VALIC may make a lump sum payment of the remaining value to the payee.

### 4.07    Betterment of Rates

If it would produce greater benefits, the amount of the Annuitant's monthly payment will be the monthly payment produced by a then currently issued immediate annuity. The immediate annuity shall be of the same form. It shall have a single stipulated payment equal to the Annuity Value being applied under this Contract. Any commuted values allowed under the settlement provisions will be determined on the basis of the interest rate used to determine the net single premium for such annuities.

### 4.08    Annuity Tables

The following tables show the amount required to purchase a first monthly payment of $1.00. The Tables are based on the Progressive Annuity Table with interest at the rate of 3 1/2% per year and assume births in the year 1900. The amount applied to effect an annuity will be the Annuity Value on the tenth day immediately preceding the date the first payment is due. The amount of each payment will depend upon the Annuitant's sex and the Annuitant's adjusted age at time the first payment is due. Adjusted age shall be determined in accordance with the following:

| Calendar Year of Birth | Adjusted Age is Actual Age |
| --- | --- |
| Before 1916 | Minus 0 |
| 1916 - 1935 | minus 1 |
| 1936 - 1955 | minus 2 |
| After 1955 | minus 3 |

Actual Age, as used above, shall mean the age at the nearest birthday at the time the first payment is due.

GFA-582                                                                                                              VPLNGCB100

## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
## WITH A FIRST MONTHLY PAYMENT OF $1.00

Options 1, 2, and 3 - Single Life Annuities

| Adjusted Age | | Monthly Payments Guaranteed | | | | |
|---|---|---|---|---|---|---|
| Male | Female | None | 60 | 120 | 180 | Cash Refund |
| 50 | 54 | $210.85 | $211.36 | $213.06 | $216.23 | $220.90 |
| 51 | 55 | 206.73 | 207.30 | 209.18 | 212.68 | 217.38 |
| 52 | 56 | 202.54 | 203.17 | 205.26 | 209.12 | 213.91 |
| 53 | 57 | 198.27 | 198.97 | 201.28 | 205.55 | 210.30 |
| 54 | 58 | 193.93 | 194.70 | 197.26 | 201.96 | 206.62 |
| 55 | 59 | 189.51 | 190.37 | 193.20 | 198.39 | 202.99 |
| 56 | 60 | 185.03 | 185.98 | 189.11 | 194.82 | 199.23 |
| 57 | 61 | 180.48 | 181.54 | 185.00 | 191.28 | 195.40 |
| 58 | 62 | 175.87 | 177.04 | 180.87 | 187.77 | 191.64 |
| 59 | 63 | 171.21 | 172.50 | 176.73 | 184.31 | 187.75 |
| 60 | 64 | 166.49 | 167.93 | 172.59 | 180.91 | 183.78 |
| 61 | 65 | 161.73 | 163.32 | 168.47 | 177.58 | 179.90 |
| 62 | 66 | 156.93 | 158.69 | 164.37 | 174.34 | 175.90 |
| 63 | 67 | 152.09 | 154.05 | 160.30 | 171.19 | 171.81 |
| 64 | 68 | 147.23 | 149.40 | 156.28 | 168.16 | 167.86 |
| 65 | 69 | 142.35 | 144.75 | 152.31 | 165.25 | 163.76 |
| 66 | 70 | 137.48 | 140.11 | 148.42 | 162.48 | 159.58 |
| 67 | 71 | 132.57 | 135.50 | 144.62 | 159.86 | 155.59 |
| 68 | 72 | 127.67 | 130.91 | 140.92 | 157.40 | 151.42 |
| 69 | 73 | 122.79 | 126.37 | 137.32 | 155.12 | 147.16 |
| 70 | 74 | 117.93 | 121.89 | 133.86 | 153.01 | 143.19 |
| 71 | 75 | 113.11 | 117.47 | 130.54 | 151.09 | 138.97 |
| 72 | 76 | 108.32 | 113.13 | 127.37 | 149.36 | 134.66 |
| 73 | 77 | 103.57 | 108.88 | 124.37 | 147.82 | 130.74 |
| 74 | 78 | 98.89 | 104.73 | 121.55 | 146.46 | 126.52 |
| 75 | 79 | 94.27 | 100.69 | 118.92 | 145.29 | 122.18 |

Option 4 - Joint and Last Survivor Annuity

| Adjusted Age of Secondary Annuitant | | Adjusted Age of Annuitant | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Male | Female | M-51 F-55 | M-56 F-60 | M-58 F-62 | M-61 F-65 | M-63 F-67 | M-66 F-70 | M-71 F-75 |
| 50 | 54 | $237.79 | $229.86 | $227.15 | $223.59 | $221.57 | $218.92 | $215.73 |
| 55 | 59 | 229.05 | 218.34 | 214.55 | 209.38 | 206.35 | 202.42 | 197.39 |
| 57 | 61 | 225.97 | 214.14 | 209.85 | 204.01 | 200.50 | 195.93 | 190.01 |
| 60 | 64 | 221.91 | 208.43 | 203.38 | 196.39 | 192.18 | 186.50 | 179.02 |
| 62 | 66 | 219.55 | 204.99 | 199.50 | 191.72 | 186.96 | 180.56 | 171.88 |
| 65 | 69 | 216.52 | 200.49 | 194.31 | 185.42 | 179.85 | 172.21 | 161.64 |
| 70 | 74 | 212.71 | 194.65 | 187.42 | 176.84 | 170.06 | 160.43 | 146.43 |

Option 5 - Payments for a Designated Period

| Years of Payment | | Years of Payment | |
|---|---|---|---|
| 3 | $ 34.26 | 10 | $101.73 |
| 4 | 44.90 | 11 | 110.01 |
| 5 | 55.19 | 12 | 118.20 |
| 6 | 65.15 | 13 | 125.94 |
| 7 | 74.74 | 14 | 133.51 |
| 8 | 84.03 | 15 | 140.85 |
| 9 | 93.02 | | |

Page 7

## Section 5
## DEATH PAYMENT AND BENEFICIARY PROVISIONS

### 5.01    Death of Participant Prior to the Annuity Date

If a Participant dies during the Accumulation Period, there will be an amount payable to the Beneficiary equal to the greater of (a) the Annuity Value on the date VALIC receives a certified copy of the death certificate or (b) 100% of Purchase Payments reduced by the amount deducted in connection with any partial surrenders.

The Beneficiary may elect within 60 days after amounts would be payable to receive the death payment as a lump sum settlement or in the form of any of the Annuity Options. The Beneficiary will thereafter be entitled to exercise all rights which an Annuitant would have during the Annuity Period, subject to the same terms and conditions.

### 5.02    Death of Annuitant During Annuity Period

If an Annuitant dies during the Annuity Period, a Beneficiary may be entitled to receive payment. If so, the Beneficiary may, within 60 days after amounts would be payable, elect one of the following three alternatives. These alternatives are not available if the Annuitant had been receiving payments under the Fourth Option.

- elect to receive in a lump sum the present value computed at an interest rate of 3 1/2% per annum, of any remaining annuity benefit payments; or
- elect to continue receiving annuity benefit payments; or
- elect to have the value of any annuity benefit payments owed applied to any of the five Annuity Options. If the Beneficiary elects either to continue receiving annuity benefit payments, or to receive the value of such payments under one of the five Annuity Options, the Beneficiary is entitled to exercise all rights hereunder.

### 5.03    Beneficiary Designation

The Annuitant may change any Beneficiary designation during the Annuitant's life. An irrevocably designated Beneficiary can be changed only with that Beneficiary's written consent. Any new designation must be filed in writing with VALIC at its Home Office. Upon receipt, the notice shall take effect as of its signature date. It shall be subject to any action taken by VALIC prior to receipt.

Unless otherwise provided, proceeds will be distributed in accordance with the following provisions. Two or more Beneficiaries living at the Annuitant's death shall share the proceeds equally. If any of two or more Beneficiaries die before the Annuitant, all proceeds shall be payable to any surviving Beneficiary(ies). If no named Beneficiary is living at the Annuitant's death, the proceeds shall be payable to the Annuitant's estate. If the Beneficiary dies at the same time as the Annuitant, rights to the proceeds shall be determined as though he or she died before the Annuitant. The Beneficiary's death shall be deemed at the same time as the Annuitant's if it occurs within 15 days of the Annuitant's death. Proof of survival for that period may be required by VALIC from any person entitled to payment.  If the Beneficiary dies while receiving payments under the Second or Fifth Options the value of remaining payments, if any, shall be paid to the estate of said Beneficiary.

## Section 6
## GENERAL PROVISIONS

### 6.01    The Contract

The Contract and the application shall constitute the entire contract between the parties. All statements made by the Contract Owner or by any Participant or Annuitant shall be deemed representations. Such statements shall not be deemed warranties. Only the President or a Vice President of VALIC has the authority to change the Contract. Any such changes shall be effective only if in writing.

### 6.02    Participant Certificates

VALIC shall issue Certificates for delivery to each Participant. Each Certificate shall set forth the benefits to which a Participant is entitled under the Contract and the Beneficiary entitled to receive payment on the Participant's death. Certificates shall not constitute a part of the Contract.

### 6.03    Misstatement of Age or Sex

If an Annuitant's age or sex has been misstated, or that of any Beneficiary under a settlement option which conditions payment upon the Beneficiary's survival, any amount payable by VALIC shall be such as would have been provided on the basis of the correct information. If a correction of age or sex is made while payments are being made hereunder, the amount of any underpayment by VALIC shall be paid in full with the next payment due. The amount of any overpayment by VALIC shall be deducted from amounts otherwise payable thereafter.

GFA-582

SPECIMEN

VPLNGCB100

If any payment(s) is(are) conditioned upon a payee's survival, VALIC will require proof of the payee's age. No payment shall be due until due proof is received by VALIC at its Home Office.

**6.04    Changes of Contract by VALIC**

On the first day of the second or any subsequent Contract Year, VALIC may, upon 90 days written notice to the Contract Owner, change any or all of the terms of the Contract. Any such change will not affect the provisions of the Contract as they apply to Purchase Payments on behalf of Participants covered prior to the effective date of such change.

**6.05    Changes of Contract by Mutual Agreement**

The Contract Owner and VALIC, by agreement in writing, may change any or all of the terms of the Contract in order to comply with applicable laws or regulations, including federal income tax law. Consent of any Participant or Beneficiary shall not be required for any such change.

**6.06    Assignments**

Neither the Contract nor a Participant's rights hereunder may be sold, assigned, discounted or pledged as collateral for a loan or as security for the performance of an obligation or otherwise transferred to any person other than VALIC. Unless contrary to applicable law, including federal tax law, the values hereunder shall not be subject to any creditor claims.

**6.07    Termination or Suspension of the Contract**

The Contract will terminate when performance by VALIC of its duties and obligations hereunder have been completed.

The Contract may be suspended on the first day of the second or any subsequent Contract Year. Effective with such suspension no new Participants will be accepted, however additional Purchase Payments will be accepted for those Participants covered hereunder prior to the effective date of such suspension.

**6.08    Deferment of Withdrawal**

VALIC may defer payment of any partial or total surrender. Any such deferral shall not exceed six months from the receipt, at VALIC's Home Office, of the surrender form. Interest shall be paid at a rate determined by VALIC if payment is deferred for thirty (30) days or more.

**6.09    Incontestability**

The provisions of the Contract shall not be contested after it has been in force for two years from the issue date. No statement made by any Annuitant shall be contested after two years from the date that the Annuitant was first covered hereunder.

**6.10    Reports to Participants**

VALIC will mail to each Participant, at least annually each Certificate Year during the Accumulation Period, a statement reporting the Annuity Value of the Participant's Account.

**6.11    Minimum Benefits, Payments and Values**

Any paid-up annuity, cash surrender, or death payment available hereunder shall not be less than the minimum benefits required by any statute of the state in which the Contract is delivered.

**6.12    Non-Participating**

The Contract is non-participating and does not share in the profits or surplus of VALIC.

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
Houston, Texas

## WEST VIRGINIA OPTIONAL RETIREMENT PROGRAM ENDORSEMENT

This Endorsement is made a part of the Contract or Certificate.

Section 2.03 (Surrender Value) is amended by adding the following:

A) Except as provided in (B) below, in the case of a withdrawal for transfer to another funding entity only 20% of the Surrender Value may be withdrawn once a year.

A Participant may choose to have the Surrender Value withdrawn for transfer in one of the following ways:

(1) Five Year Equal Annual Installment Method. The interest rate during the five year payout period will be declared in advance by VALIC. No other withdrawals may be made once payments begin.

(2) Decreasing Balance Method. 1/5 of the account balance the first year. 1/4 of the remaining balance the second year. 1/3 of the remaining balance the third year. 1/2 of the remaining balance the fourth year. The entire remaining balance the fifth year. Interest under this method will be credited at a rate determined by VALIC. Withdrawals may be made under this method.

B) The 20% a year restriction of this section does not apply if:

(1) The Surrender Value remaining would be less than $500, or;

(2) The withdrawal is for transfer to the funding entity for West Virginia ORP Common Stock Fund or the West Virginia ORP Bond Fund.

Section 3.02 is deleted. There will be no surrender charges under this Contract. The account Surrender Value is equal to the Annuity Value.

Section 5.03 (Beneficiary Designation) is replaced with the following:

The Annuitant may change any Beneficiary during the Annuitant's life. Any change must be filed in writing with the West Virginia State Teacher's Retirement System. Any beneficiary designation not filed under the West Virginia State Teacher's Retirement System will not be honored even if received by VALIC at VALIC's Home Office.

Proceeds will be distributed in accordance with the following provisions. Two or more Beneficiaries living at the Annuitant's death shall share the proceeds equally. If any of two or more Beneficiaries die before the Annuitant, all proceeds shall be paid to any surviving Beneficiary(ies). If no named Beneficiary is living at the Annuitant's death, the proceeds shall be paid to the Annuitant's estate. If the Beneficiary dies at the same time as the Annuitant, rights to the proceeds shall be determined as though he or she died before the Annuitant. The Beneficiary's death shall be deemed at the same time as the Annuitant's if it occurs within 15 days of the Annuitant's death. Proof of survival for that time may be required by VALIC from any person entitled to payment. If the Beneficiary dies while receiving payments under the Second or Fifth Options, the value of remaining payments, if any, shall be paid to the estate of said Beneficiary.

The effective date of this Endorsement is the Policy Issue Date.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: *Mary L. Cavanaugh*
Mary Cavanaugh
Secretary

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY
## Houston, Texas

### ENDORSEMENT

Made a part of the Contract or Certificate to which it is attached.

The Annuity Tables of the Contract or Certificate are amended for Contract accumulations on or after July 1, 1987.

The following tables show the dollar amount required to purchase an annuity with a first monthly payment of $1.00. The Tables are computed by using an interest rate of 3 1/2% per year and a mortality table produced from the 1983 Table a. The amount applied to effect an annuity will be the Annuity Value on the tenth day prior to the date the first payment is due. The amount of each payment will be based on the Annuitant's age at the birthday nearest to the time the first payment is due.

If it would yield greater benefits for Fixed Annuities, the amount of the Annuitant's monthly payment will be the monthly payment produced by a then currently issued immediate annuity of the same form.

## DOLLAR AMOUNT REQUIRED TO PURCHASE AN ANNUITY
## WITH A FIRST MONTHLY PAYMENT OF $1.00

Options A(1), B(2), and C(3) -- Single Life Annuities

| Age | None | Monthly Payments Guaranteed 60 | 120 | 180 | Cash Refund |
|-----|------|------|------|------|-------------|
| 50 | $ 233.36 | $ 233.71 | $ 234.82 | $ 236.75 | $ 240.70 |
| 51 | 229.87 | 230.25 | 231.45 | 233.54 | 237.65 |
| 52 | 226.30 | 226.72 | 228.01 | 230.29 | 234.54 |
| 53 | 222.65 | 223.10 | 224.51 | 226.98 | 231.36 |
| 54 | 218.93 | 219.41 | 220.93 | 223.62 | 228.12 |
| 55 | 215.11 | 215.64 | 217.28 | 220.22 | 224.82 |
| 56 | 211.21 | 211.78 | 213.57 | 216.77 | 221.45 |
| 57 | 207.23 | 207.84 | 209.79 | 213.28 | 218.02 |
| 58 | 203.15 | 203.81 | 205.94 | 209.76 | 214.53 |
| 59 | 198.98 | 199.70 | 202.03 | 206.21 | 210.98 |
| 60 | 194.73 | 195.51 | 198.06 | 202.64 | 207.33 |
| 61 | 190.38 | 191.24 | 194.04 | 199.05 | 203.63 |
| 62 | 185.95 | 186.90 | 189.97 | 195.47 | 199.85 |
| 63 | 181.45 | 182.50 | 185.86 | 191.89 | 195.99 |
| 64 | 176.88 | 178.03 | 181.73 | 188.35 | 192.18 |
| 65 | 172.25 | 173.52 | 177.57 | 184.84 | 188.25 |
| 66 | 167.56 | 168.95 | 173.41 | 181.39 | 184.24 |
| 67 | 162.81 | 164.34 | 169.24 | 178.00 | 180.31 |
| 68 | 158.01 | 159.70 | 165.09 | 174.70 | 178.25 |
| 69 | 153.16 | 155.01 | 160.95 | 171.49 | 172.11 |
| 70 | 148.26 | 150.30 | 156.85 | 168.40 | 168.10 |
| 71 | 143.31 | 145.57 | 152.79 | 165.44 | 163.94 |
| 72 | 138.33 | 140.83 | 148.81 | 162.62 | 159.70 |
| 73 | 133.32 | 136.10 | 144.91 | 159.98 | 155.66 |
| 74 | 128.31 | 131.39 | 141.11 | 157.51 | 151.45 |
| 75 | 123.30 | 126.73 | 137.44 | 155.22 | 147.15 |

SPECIMEN

CC-787-E-M

SM0CMST1

## Option D(4) -- Joint and Survivor Life Annuity

| Younger Annuitant: Age of Older Annuitant | Number of Years Younger Than Older Annuitant | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 0 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 50 | $256.95 | $258.82 | $260.70 | $262.61 | $264.53 | $266.46 | $268.39 | $270.33 | $272.26 | $274.19 | $276.10 |
| 51 | 253.87 | 255.79 | 257.73 | 259.69 | 261.67 | 263.66 | 265.66 | 267.66 | 269.65 | 271.64 | 273.61 |
| 52 | 250.89 | 252.67 | 254.67 | 256.69 | 258.73 | 260.78 | 262.84 | 264.90 | 266.96 | 269.00 | 271.04 |
| 53 | 247.42 | 249.45 | 251.52 | 253.60 | 255.70 | 257.81 | 259.93 | 262.06 | 264.18 | 266.29 | 268.39 |
| 54 | 244.06 | 246.15 | 248.27 | 250.41 | 252.58 | 254.75 | 256.94 | 259.13 | 261.31 | 263.49 | 265.66 |
| 55 | 240.59 | 242.75 | 244.93 | 247.14 | 249.36 | 251.60 | 253.85 | 256.11 | 258.36 | 260.61 | 262.85 |
| 56 | 237.03 | 239.25 | 241.49 | 243.76 | 246.05 | 248.36 | 250.68 | 253.00 | 255.32 | 257.64 | 259.94 |
| 57 | 233.37 | 235.64 | 237.95 | 240.29 | 242.65 | 245.02 | 247.41 | 249.80 | 252.19 | 254.57 | 256.95 |
| 58 | 229.60 | 231.94 | 234.31 | 236.72 | 239.14 | 241.59 | 244.04 | 246.50 | 248.96 | 251.42 | 253.87 |
| 59 | 225.73 | 228.13 | 230.57 | 233.04 | 235.54 | 238.05 | 240.58 | 243.11 | 245.64 | 248.17 | 250.70 |
| 60 | 221.75 | 224.22 | 226.72 | 229.26 | 231.83 | 234.41 | 237.01 | 239.62 | 242.23 | 244.83 | 247.43 |
| 61 | 217.68 | 220.19 | 222.77 | 225.38 | 228.02 | 230.68 | 233.35 | 236.03 | 238.71 | 241.39 | 244.07 |
| 62 | 213.47 | 216.07 | 218.71 | 221.39 | 224.10 | 226.83 | 229.58 | 232.34 | 235.10 | 237.86 | 240.61 |
| 63 | 209.17 | 211.84 | 214.55 | 217.30 | 220.08 | 222.89 | 225.71 | 228.55 | 231.39 | 234.23 | 237.05 |
| 64 | 204.78 | 207.50 | 210.28 | 213.10 | 215.96 | 218.84 | 221.74 | 224.66 | 227.57 | 230.49 | 233.40 |
| 65 | 200.28 | 203.07 | 205.91 | 208.80 | 211.73 | 214.69 | 217.67 | 220.66 | 223.66 | 226.66 | 229.65 |
| 66 | 195.69 | 198.54 | 201.45 | 204.40 | 207.40 | 210.43 | 213.49 | 216.57 | 219.65 | 222.73 | 225.80 |
| 67 | 191.01 | 193.92 | 196.89 | 199.91 | 202.98 | 206.08 | 209.22 | 212.37 | 215.53 | 218.70 | 221.86 |
| 68 | 186.24 | 189.21 | 192.24 | 195.33 | 198.46 | 201.64 | 204.84 | 208.07 | 211.32 | 214.56 | 217.81 |
| 69 | 181.38 | 184.41 | 187.50 | 190.65 | 193.85 | 197.10 | 200.38 | 203.68 | 207.00 | 210.33 | 213.66 |
| 70 | 176.44 | 179.52 | 182.68 | 185.89 | 189.16 | 192.47 | 195.82 | 199.20 | 202.60 | 206.01 | 209.42 |
| 71 | 171.42 | 174.55 | 177.77 | 181.04 | 184.37 | 187.75 | 191.17 | 194.62 | 198.10 | 201.59 | 205.08 |
| 72 | 166.33 | 169.51 | 172.78 | 176.11 | 179.51 | 182.95 | 186.44 | 189.96 | 193.51 | 197.07 | 200.65 |
| 73 | 161.17 | 164.40 | 167.71 | 171.10 | 174.56 | 178.07 | 181.63 | 185.22 | 188.83 | 192.47 | 196.12 |
| 74 | 155.97 | 159.22 | 162.58 | 166.02 | 169.53 | 173.11 | 176.73 | 180.39 | 184.08 | 187.79 | 191.51 |
| 75 | 150.73 | 154.01 | 157.39 | 160.87 | 164.44 | 168.07 | 171.75 | 175.48 | 179.24 | 183.02 | 186.82 |

## Option E(5) -- Payment for a Designated Period

| Years of Payment | | Years of Payment | |
|---|---|---|---|
| 1 | $ 11.81 | 9 | $ 93.02 |
| 2 | 23.23 | 10 | 101.73 |
| 3 | 34.26 | 11 | 110.01 |
| 4 | 44.90 | 12 | 118.20 |
| 5 | 55.19 | 13 | 125.94 |
| 6 | 65.15 | 14 | 133.51 |
| 7 | 74.74 | 15 | 140.85 |
| 8 | 84.03 | | |

SPECIMEN

For Contract accumulations between August 1, 1983 and June 30, 1987, annuity payments will be the monthly payments based on the male rates under the Annuity Tables in the Contract or Certificate.

The effective date of this Endorsement is the Policy Issue Date.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: _Mary T. Cavanaugh_
Mary Cavanaugh
Secretary

CC-787-E-M

SM0CMST2

# THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

## HOUSTON, TEXAS

## TAX REFORM ACT OF 1986 ENDORSEMENT

This Endorsement is part of Contracts or Certificates issued for retirement plans and annuity contracts. These plans and contracts are subject to special Internal Revenue Code ("Code") requirements.

Section references are to the Code in effect on January 1, 1989. The term "Participant" includes the Contractholder, Certificateholder, or Annuitant. The term "Contributions" includes Purchase Payments. The following provisions are part of the "plan", if so required. Notwithstanding other Contract or Certificate provisions, the following applies as required by the Code.

### 1. Minimum Payments After Age 70 1/2.

The following rules apply to Contracts and Certificates issued under these programs: a section 401(a), 401(k), or 403(a) pension plan, 403(b) tax deferred annuity, a 457 deferred compensation plan, or a 408(b) individual retirement annuity.

Payments from this Contract will comply with section 401(a)(9). Annuity payments or yearly minimum payments are generally required after the Participant is age 70 1/2 or death. The rules of section 401(a)(9) are made a part of this Contract.

The yearly payment amount is set each year. These payments are based on life expectancy. The life expectancies of the Participant and Beneficiary will be computed each year. The Participant may instead elect to use the life expectancies at the first payment only. (The election may be made for self, for a spouse Beneficiary, or for both.)

If the Participant dies before these payments have begun, a death benefit is payable. The Beneficiary may receive the whole benefit by 5 years after the Participant's death. Otherwise, payments may be made over the life or life expectancy of the Beneficiary if they start within 1 year of death. A spouse Beneficiary may delay payments until the Participant would have been 70 1/2. For 408(b), a spouse may wait until the spouse reaches 70 1/2.

If the Participant dies after these payments start, a death benefit is payable. The benefit must be paid at least as fast as the method used by the Participant.

For 403(b), the rules above apply only to amounts added to the account after December 31, 1986. Pre-January 1, 1987 amounts must begin to be paid when the Participant is age 75. For these older 403(b) amounts, payments must meet the following rule. The present value of payments to the Participant, over life, must exceed 50% of the present value of all payments. This 50% rule will not apply to joint annuities if the spouse is the named survivor.

### 2. Contribution Limits.

For 403(b), the following Contribution rules will apply.

Elective contributions under section 402(g) (usually made by salary reduction) are allowed only under the following condition. A Participant's elective Contributions under all the employer's plans cannot exceed the section 402(g)(1) limit for that calendar year.

Elective Contributions can be made hereunder only under the following condition. All employees of the employer must be able to make such elective Contributions. The employer may require a yearly minimum of at least $200.

### 3. Withdrawal Restrictions before Age 59 1/2.

For 403(b), the following distribution rules will apply.

The portion of an account made up of elective Contributions and the income thereon, cannot be paid out unless the following has occurred. The Participant is (i) 59 1/2, (ii) separated from service with the employer, (iii) deceased, (iv) disabled, or (v) incurring a hardship.

The term "disabled" shall mean an individual who is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration. An individual shall not be considered to be disabled unless he furnishes proof the existence thereof in such form and manner as the Secretary may require.

These payment rules do not apply to amounts credited to the Participant's account on December 31, 1988. Such amounts can be paid in 1989 and later years. All payments are subject to the employer's plan terms under which this Contract or Certificate was purchased.

If hardship occurs, only Contributions may be paid out; income on those Contributions cannot be paid. Hardship payments will be made only if the need meets the following standard. There must be an immediate and heavy financial need of the Participant and the payment must be required to meet that need. The decision will be based on legal requirements and on the Participant's statements at the time of the request.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

By: *Mary F. Cavanaugh*

Mary Cavanaugh
Secretary

SPECIMEN

DC0CBST2

**THE VARIABLE ANNUITY LIFE INSURANCE COMPANY**
(the "Company")
2929 Allen Parkway
Houston, Texas 77019

## ECONOMIC GROWTH AND TAX RELIEF RECONCILIATION ACT ("EGTRRA") RETIREMENT PLAN ANNUITY CONTRACT ENDORSEMENT

This Endorsement is made a part of the individual annuity contract or group annuity certificate to which it is attached (the "Contract"). The Contract is issued in connection with certain employer-sponsored retirement plans or arrangements, which may be described under any of the following Code Sections: 401(a) (including 401(k)); 403(a); 403(b); 457(b) (the "Plan"). The Plan may limit the exercise by the Participant or a Beneficiary of rights under the Contract, including any endorsements thereto, and may limit the rights described in this Endorsement.

Section references are to the Code, which means The Internal Revenue Code of 1986 as now or hereafter amended. The term "Applicable Law" means laws that may either limit or compel the exercise of rights under the Contract, including, but not limited to, the Code, the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the laws of the state in which the Contract was issued.

This Endorsement shall supersede any inconsistent provisions of the Contract or any endorsement issued prior to or concurrent with this Endorsement.

1. Contribution Limitations

   a. Contributions (not including transfers and rollovers) may be made to this Contract up to the applicable limits set forth in the Code and the Plan. If the Contract is issued under a Plan to which Code Section 402(g) applies, including Contracts issued under a 403(b) plan or arrangement, except as otherwise provided herein elective deferrals by the Participant to this Contract may not exceed the limit under Section 402(g).

   b. Contributions properly made pursuant to Code Section 414(v) by Participants who otherwise qualify to make such contributions shall be disregarded in determining whether contributions to the Contract have exceeded the limits imposed under the Contract.

   c. The Plan may require the Participant to temporarily cease contributions upon issuance of a distribution for financial hardship.

   d. Contributions determined to be in excess of applicable limits, that are identified by the Company, by the Plan, or by the Participant, shall be returned to the Participant or to the Employer or held in an unallocated account, according to the requirements of Applicable Law. The Company will cooperate with the Plan and the sponsoring employer in the correction of excess contributions identified in an IRS examination; provided, however, that the Plan sponsor shall consult with the Company before entering into any agreement with regard to such excess amounts in the Contract.

2. Distribution Eligibility and Portability

   a. A Plan Participant may receive a distribution from this Contract following severance of employment with the employer sponsoring the Plan.

EGTR-302

1.

SPECIMEN

b. A distribution to a Plan Participant, or to a former spouse or surviving spouse of the participant, which is an Eligible Rollover Distribution, may be transferred in a qualifying rollover to any Eligible Retirement Plan. For purposes of this paragraph, "Eligible Rollover Distribution" and "Eligible Retirement Plan" shall have the meaning given to them in the Code, as applicable to the type of plan under which the Contract is issued and/or maintained at the time of the distribution. Except as Applicable Law may otherwise provide, any Eligible Rollover Distribution from the Contract shall be subject to mandatory tax withholding if paid to the Participant, or where applicable, to the Participant's former spouse or spousal beneficiary.

c. A Participant or Beneficiary may request a non-reportable plan-to-plan transfer of a portion of the Contract value to another plan or contract, subject to any applicable limitations in the Plan, the Contract, and Applicable Law.

d. An employer may not request a distribution of a Participant's account to the Participant unless the employer is authorized to do so under the Plan and permitted to do so under Applicable Law.

e. This Contract will accept Eligible Rollover Distributions from other plans, provided however that rollovers of after-tax amounts will be permitted only with the advance written consent of the Company. The Company may establish separate accounts for such rollover distributions, where administratively practicable, in order to maintain such separate records as may be necessary or appropriate.

3. Required Distributions. Except as otherwise required by Applicable Law, distributions to the Participant must commence by April 1 of the year following the year in which the Participant attains age 70 ½ or, if later, retires from service with the Plan sponsor. Distributions to Participants and Beneficiaries shall be made in accordance with Code Section 401(a)(9) and regulations thereunder. Where permitted by Applicable Law, a Participant or a Beneficiary may aggregate this contract with other contracts issued under the plan, or in the case of 403(b) contracts, with other 403(b) contracts or accounts, in determining the distribution that must be taken from this Contract.

4. In the absence of federal legislative action, one or more of the provisions of the Code that are reflected in this Endorsement will automatically expire on January 1, 2011. In the event of such automatic expiration, such provisions shall cease to apply under this Endorsement.

Except as Applicable Laws otherwise require, the provisions of this Endorsement shall be effective as of January 1, 2002, or the Contract Date of Issue, whichever is later.

THE VARIABLE ANNUITY LIFE INSURANCE COMPANY

*Mary L. Cavanaugh*

Mary L. Cavanaugh
Secretary

SPECIMEN

# LIMITATIONS AND EXCLUSIONS UNDER THE WEST VIRGINIA

# LIFE AND HEALTH INSURANCE GUARANTY ASSOCIATION ACT

Residents of West Virginia who purchase life insurance, annuities or health insurance should know that the insurance companies licensed in this state to write these types of insurance are members of the West Virginia Life and Health Insurance Guaranty Association. The purpose of this association is to assure that policy holders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the claims of insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however. And, as noted in the box below, this protection is not a substitute for consumers' care in selecting companies that are well-managed and financially stable.

---

**The West Virginia Life and Health Insurance Guaranty Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in West Virginia. You should not rely on coverage by the West Virginia Life and Health Insurance Guaranty Association in selecting an insurance company or in selecting an insurance policy. For a complete description of coverage, consult Article 26A, Chapter 33 of the West Virginia Code.**

**Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk.**

**Insurance companies or their agents are required by law to give or send you this notice. HOWEVER, INSURANCE COMPANIES AND THEIR AGENTS ARE PROHIBITED BY LAW FROM USING THE EXISTENCE OF THE GUARANTY ASSOCIATION TO INDUCE YOU TO PURCHASE ANY KIND OF INSURANCE POLICY.**

**The Guaranty Association or the West Virginia Insurance Commission will respond to questions you may have which are not answered by this document. Policyholders with additional questions may contact:**

**West Virginia Life and Health Insurance Guaranty Association**
**P.O. Box 816**
**Huntington, West Virginia 25712**

**West Virginia Insurance Commissioner**
**Consumer Services Division**
**2019 Washington Street, East**
**P. O. Box 50540**
**Charleston, West Virginia 25305-0540**
**(304) 558-3386**
**Toll Free 1-800-642-9004**
**TDD 1-800-435-7381**

---

SPECIMEN

The state law that provides for this safety-net coverage is called the West Virginia Life and Health Insurance Guaranty Association Act. On the back of this page is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law nor does it in any way change anyone's rights or obligations under the act or the rights or obligations of the Guaranty Association.

(please turn to back of page)

Generally, individuals will be protected by the West Virginia Life and Health Insurance Guaranty Association if they live in West Virginia and hold a life or health insurance contract, annuity contract, unallocated annuity contract, or if they are insured under a group life, health or annuity insurance contract, issued by a member insurer. Member insurer also includes non-profit service corporations (W. Va. Code Sec. 33-24) and health care corporations (W. Va. Code Sec. 33-25). The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are **not** protected by this association if:

- they are eligible for protection under the laws of another state (this may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state);
- the insurer was not authorized to do business in this state;
- the policy was issued at a time when the insurer was not licensed or authorized to do business in the state;
- their policy was issued by an HMO, a fraternal benefit society, mandatory state pooling plan, a mutual protective association or similar plan in which the policy holder is subject to future assessments, an insurance exchange, or any entity similar to the above.

The association also does **not** provide coverage for:

- any policy or portion of a policy which is not guaranteed by the insurer or for which the individual or contractholder has assumed the risk;
- any policy of reinsurance (unless an assumption certificate was issued);
- interest rate yields that exceed an average rate;
- dividends;
- credits given in connection with the administration of a policy by a group contractholder;
- employer or association plans to the extent they are self-funded (that is, not insured by an insurance company, even if an insurance company administers them) or uninsured, including:
  - i.   multiple employer welfare arrangement;
  - ii.  minimum premium group insurance plan;
  - iii. stop loss group insurance plan; or
  - iv.  administrative services only contract.
- any unallocated annuity contract issued to an employee benefit plan protected under the federal pension guaranty corporation;
- any portion of any unallocated contract which is not issued to or in connection with a specific employee, union or association's benefit plan or a governmental lottery.

## LIMITS ON AMOUNT OF COVERAGE

The act also limits the amount the association is obligated to pay out. The association cannot pay more than what the insurance company would owe under a policy or contract. Also, for any one insured life, the association will pay a maximum of $300,000 - no matter how many policies and contracts there were with the same company, even if they provided different types of coverages. Within this overall $300,000 limit, the association will not pay more than $100,000 in cash surrender values, $100,000 in health insurance benefits, $100,000 in present value of annuities, or $300,000 in life insurance death benefits - again, no matter how many policies and contracts there were with the same company, and no matter how many different types of coverages.

**Note to benefit plan trustees or other holders of unallocated annuities (GICs, DACs, etc.) covered by the act:** for unallocated annuities that fund governmental retirement plans under Sec. 401(k), 403(b) or 457 of the Internal Revenue Code, the limit is $150,000 in present value of annuity benefits including net cash surrender and net cash withdrawal per participating individual. In no event shall the association be liable to spend more than $300,000 in the aggregate per individual; for covered unallocated annuities that fund other plans, a special limit of $1,000,000 applies to each contract holder, regardless of the number of contracts held with the same company or number of persons covered. In all cases, of course, the contract limits also apply.

SPECIMEN

DC0C8WV2

# CUSTOMER SERVICE INFORMATION

If you have any questions regarding this policy, wish to register a complaint or wish to contact us if you did not receive sales material related to this contract, please call us at 1-800-448-2542 or write:

The Variable Annuity Life Insurance Company
Customer Service Department
P. O. Box 15648
Amarillo, Texas 79105

SPECIMEN

DCOCB100



**West Virginia Investment Management Board**
*500 Virginia Street, East — Suite 200*
*Charleston, West Virginia 25301*

Phone: (304) 345-2672
Fax: (304) 345-5939
*Website: www.wvimb.org*

December 18, 2008

Jim Coppedge
Senior Vice President and General Counsel
AIG Retirement
2929 Allen Parkway, L4-01
Houston, TX 77019

RE: Annuity Contract No. 69562

Dear Mr. Coppedge:

After thorough review of the above referenced contract, the West Virginia Investment Management Board requests the withdrawal of all funds held under the contract on or before December 31, 2008. Please have the appropriate person at VALIC contact Matt Jones, Chief Financial Officer, at the West Virginia Investment Management Board as soon as possible to effectuate this transfer. Matt Jones can be reached at 304-345-2672. If you have any other questions, please do not hesitate to contact me.

Thank you for your prompt assistance in this matter.

Sincerely,

H. Craig Slaughter
Executive Director

HCS:jaa

cc:  Rick Sdao
     Katherine Stoner
     Matt Jones